SHEARN, Appellant, v. ANDERSON et al., Respondents

(48 N. W.2d 821)

(File No. 9171. Opinion filed July 10, 1951)

James M. Doyle and Hanley, Leedom & Driscoll, Rapid City, for Appellant.

E. V. Morrill, Sturgis, for Respondent Alvin Anderson.
Morrison & Skaug, Mobridge, for Respondent Lynn Farnham.
Helm & Bottum, Sturgis, for Respondents J. J. Miller, Jr., and Patsy Miller.

SICKEL, J. This action was brought to set aside a conveyance of real property. Alvin Anderson and his wife Mary Anderson, now deceased, lived on a ranch situated in Meade county consisting of 1,311 acres. The ownership of this land was as follows: Alvin Anderson, defendant, owned 200 acres, Mary Anderson 511 acres, Jennie Anderson Senger 160 acres, Alvin Anderson and Jennie Anderson Senger, in common, 440. The dwelling and ranch buildings were located on the land owned by Mary Anderson. On November 18, 1946, Alvin Anderson, defendant, and Mary Anderson, his wife, executed a deed conveying the entire ranch to J. P. Miller, Jr., for the sum of $12,000, payable, $6,000 paid in cash and the balance secured by mortgage on the ranch. The interest of Jennie Anderson Senger was obtained by deed. On April 27, 1931, judgment was entered in the circuit court of Meade county in favor of T. P. Rogers, plaintiff, against Alvin Anderson, defendant, for $5,856.88. The judgment

creditor died after which the judgment was assigned to Wilfarene Rogers, the widow, by authority of the probate court in Iowa. The judgment was assigned to Herbert J. Shearn, plaintiff in this action, on July 31, 1947.

The plaintiff in this action alleges that on November 18, 1946, at the time of the execution of the deed "Mary Anderson was mentally ill, incompetent, and without power, competence or legal capacity to execute a deed * * *." This issue was tried in the circuit court where it was decided that "* * * Mary Anderson being of sound mind and fully competent to do so, executed and soon thereafter delivered a deed for a valuable consideration to J. P. Miller, Jr., to the lands described which was filed May 10, 1947. That said J. P. Miller, Jr., and Patsy Miller are in possession of and the lawful owners of said premises subject to a $6,000 mortgage * * *." Judgment dismissing the action on the merits was entered and plaintiff appealed.

 The burden of proving the mental incapacity of the grantor, Mary Anderson, to execute the deed was upon the plaintiff in this action. Egan v. Shindelbower, 73 S.D. 212, 41 N.W.2d 225, 226. The rule regarding the sufficiency of the evidence to establish incompetency has been stated by this court as follows: "Impairment of the faculties by disease or old age will not invalidate a deed if the party executing it had sufficient mental capacity to understand his act. It must be shown that the grantor did not have sufficient mind and memory to comprehend the nature and character of the transaction. Mental weakness that does not amount to inability to comprehend and understand the nature and effect of the transaction is not sufficient to invalidate a deed." Meyer v. Kiecksee, 68 S. D. 43, 298 N.W. 261; Egan v. Shindelbower, supra.

The evidence relied upon by the appellant in this case is that Mary Anderson had for several years suffered from arthritis and diabetes. That in July 1945 she was taken to Rochester for examination. There she was given some medicine and some general advice as to care and rest. Her husband testified that from the time of her visit to Rochester until November 1946, he noticed no change in her mental condition; that she was normal mentally during that period

of time except that she became forgetful and grew weaker through steady loss of weight; that it was only the loss of weight that gave him concern during that time. Defendant, Alvin Anderson, further testified that the deed was drawn at the Faith bank about a week before Novmber 18, 1946; that he and Mrs. Anderson took the deed home and checked the descriptions of the land piece by piece; that Mrs. Anderson knew what land was in her name and which land was in his name, and what part was in the name of Mr. Anderson's sister; he further testified that they used the township plat; that Mr. Butler came along about that time and told them about Mrs. Howard's place, an old folks' home in Rapid City, and that Mrs. Anderson said "That will be fine, but, * * * let's get this deed signed up first". Mr. Anderson testified that there was nothing wrong with her mentally so far as he could tell until the day after he left her at the Howard home, November 20, 1946.

Mrs. Anderson was taken by her husband to the Howard home on the evening of November 19, 1946, which was the day after the execution of the deed at Faith. They had the evening meal with Mrs. Howard and visited in one of her rooms. There they had "quite a talk". Mrs. Anderson told of selling the ranch and wanted to stay with Mrs. Howard to rest while Mr. Anderson went back to the ranch to dispose of the personal property. The Andersons wanted to buy a home in town as soon as it could be arranged. Mrs. Howard testified that Mrs. Anderson then showed visible signs of arthritis. She was quite nervous and a little flighty though she sat up and ate very nicely. There was nothing odd or strange about the complaints Mrs. Anderson made that night, and nothing happened to disturb Mrs. Howard to the extent that she was not going to try to keep her. It was after this visit that Mrs. Howard agreed to keep Mrs. Anderson. A day or two later Mrs. Howard talked to Mr. Anderson over the telephone and mentioned a sudden change that had come over Mrs. Anderson. She had become nervous and dissatisfied and wanted to be on the go. She flew into a rage, thought her husband had gone and left her. Once she got out of the house and the ladies brought her back. At times she would be quite rational, would sit down and visit. One

day she would make her bed and the next day "you wouldn't know whether it was a bed or a bundle of clothes to be moved out." She was very devoted to her husband and was always talking about him. When he came to visit her she was more contented. It was then that Mrs. Howard decided that she was unable to keep Mrs. Anderson at her home. That was because she wanted to leave all the time, had to be watched always, and with other patients and help not available Mrs. Howard could not cope with the situation. Mrs. Anderson did not harm any one and was very gentle and kind. She would visit and carry on a conversation especially when her husband came in. Then she would visit and would be quiet and pleased. They spoke about their business affairs. Thereafter Mr. Anderson came and took her away.

The testimony of Alvin Anderson and Mrs. Howard to the effect that Mrs. Anderson was sane at the time she was taken to Mrs. Howard's home on November 19th is corroborated by all the other witnesses who testified at the trial. Arthur Naslund, the Faith banker who prepared the deed, had known Mrs. Anderson for twenty years. The deed, signed by Mr. and Mrs. Anderson, was brought to him for acknowledgment on November 18. Mr. Anderson acknowledge his signature. Then Mr. Naslund went out to the car and talked to Mrs. Anderson for awhile. He asked her if the signature on the deed was hers and she said it was. She appeared to him to be normal mentally and ailing physically.

Lynn Farnham, a neighbor, knew Mrs. Anderson had physical trouble or disease, but testified that she always appeared to know what she was doing or talking about except that she would sometimes forget. He never observed any need for sending her to the State Hospital at Yankton.

George Wallace, a neighbor of the Andersons for twenty-five years, was at the Anderson ranch about the time that it was sold. He had seen and visited with them as neighbors. He knew Mrs. Anderson was in ill health and he testified that she talked rationally and normally during all of the years of their acquaintance.

Merton Ott lived on a ranch adjoining Andersons for nineteen years. He was their postmaster and knew them

as neighbors. They exchanged work together. He saw and talked with Mrs. Anderson two or three times a week during 1945 and 1946 until the time when they moved to Rapid City. He never observed any mental disability in Mrs. Anderson and in his opinion she was sound mentally when she left the ranch. He testified that her mental capacity was not affected by her physical illness.

From the foregoing evidence it appears that Mrs. Anderson's physical health had become impaired by disease and age to a considerable extent on November 18, 1946. It also appears that at the time the deed was executed and acknowledged her memory had become somewhat impaired but that she comprehended and understood the nature and effect of the transactions involved in the sale of the ranch and the conveyance of the title to the Millers on the date above mentioned.

Appellant took the deposition of Dr. Donald B. Williams, Assistant Superintendent of the State Hospital for the Insane at Yankton. By his deposition and the records of the Board of Insanity of Meade county it was established as a fact that Mrs. Anderson was mentally unbalanced when she was received in the hospital on November 23, 1946. Dr. Williams also testified that in his opinion the patient had been entirely without understanding for six months or a year before entering the hospital. He later reduced this period to four months. Appellant states that this testimony of the doctor "has an irrefragable impact that is completely conclusive. This evidence stands undisputed and indisputable."

Dr. Williams is an expert in the science of medicine and psychiatry. He has the scientific learning and experience which enabled him to observe the patient, ascertain her mental state at the time, and to determine the precise facts of science which caused her condition. It often occurs that the opinions of experts like Dr. Williams are indispensable in determining questions which are unfamiliar to ordinary witnesses. Jones on Evidence, 4th Ed. Sec. 367. Within that field the opinions of lay witness are not admissible. Id. Sec. 360. This rule, however, does not exclude the opinions and conclusions of lay witnesses "* * * on sub-

jects which are within the common knowledge of men of ordinary education, experience and opportunities for observation". Jones on Evidence, 4th Ed., Sec. 359. On this subject Wigmore on Evidence, 3rd Ed., Sec. 1933 says: "At common law in England there never had been any question that the opinions of lay-witnesses as to sanity or insanity could be received. Wherever a person presented himself as having had acquaintance with and therefore observation of a testator or an accused person whose sanity was in question, i. e. wherever the witness had the fundamental testimonal qualification of personal observation no one thought of objecting on the score of the Opinion rule". Jones on Evidence, 4th Ed., Sec. 364 states the rule as follows: "The opinions of ordinary witnesses are generally received where the question is as to the sanity or insanity of an individual, the ground of admission of the testimony being that it is often impossible for witnesses adequately to describe to the court or jury the actions, looks, or symptoms which properly constitute the basis for forming a conclusion or opinion". The above is a rule of long standing in this state. State v. Leehman, 2 S. D. 171, 49 N.W. 3; Halde v. Schultz, 17 S. D. 465, 97 N.W. 369.

We therefore hold that the testimony of Dr. Williams was not conclusive on the issue of the mental capacity of Mary Anderson to execute and acknowledge the deed on November 18, 1946; that the issue was one of fact to be decided by the circuit court; that the evidence is legally sufficient to support the decision of the circuit court holding that Mary Anderson comprehended and understood the nature of the transaction involved in this conveyance. In view of this conclusion the other assignments of error need not be considered.

Judgment affirmed.

RUDOLPH, P. J., and ROBERTS and SMITH, JJ., concur.

LEEDOM, J., took no part in the decision.