ESTATE OF EVANS

JONES, Appellants v. S.D. CHILDREN'S HOME SOCIETY, SIOUX FALLS, et al., Respondents

(238 N.W.2d 677)

(File Nos. 11576, 11658. Opinion filed February 13, 1976)

Douglas W. Bantz, of Bantz & Gosch, Aberdeen, for contestants and appellants.

Daniel R. Fritz, of Maloney, Kolker, Kolker & Fritz, Aberdeen, for proponent and respondent, William E. Maynard, Executor.

DUNN, Chief Justice.

Appeal No. 11576 is a will contest. Contestants appeal from a judgment and order admitting the will of Richard T. Evans, dated April 19, 1972, to probate, alleging (1) that the court erred by shifting the burden of showing testamentary capacity from the

proponent, William E. Maynard, to the contestants, Roland H. and Rosella Jones; (2) that the court erred in finding that the testator had the requisite testamentary capacity on April 19, 1972; and (3) that the court erred in not finding that the contested will was the product of undue influence. We affirm.

In Appeal No. 11658, contestants challenge an order of December 31, 1974, filed January 6, 1975, for the conveyance of real property pursuant to agreement of decedent, Richard T. Evans, dated February 12, 1971, alleging that the decedent was incompetent to enter into the contract for deed on that date. We reverse.

Richard T. Evans, a lifelong resident of Brown County, South Dakota, died in Aberdeen on April 1, 1974. On April 8, 1974, William E. Maynard petitioned the court for letters testamentary and probate of a will purporting to be the last will and testament of Richard T. Evans. The instrument was dated April 19, 1972. On April 23, 1974, contestants, Rosella and Roland Jones, filed a will and a codicil with the court which also purported to be the last will and testament of Richard T. Evans. The will was dated August 23, 1963, and the codicil was executed on October 22, 1968. The Joneses also filed a petition in opposition to probate of the April 19, 1972 will.

Trial on the matter was held on July 8, 1974, and after at least one continuance was concluded on July 22, 1974. At the trial, the contestants contended that the April 19, 1972 will was invalid because Richard T. Evans on that date lacked testamentary capacity and they also contended that the will was procured through the undue influence of attorney Dennis Maloney. After hearing all the evidence, the court made findings of fact and conclusions of law and filed an order and judgment admitting the 1972 will to probate.

Before considering the specific points which contestants raised in this appeal, we must first examine the actions of attorneys Dennis Maloney and Daniel Fritz of the firm of Maloney, Kolker, Kolker & Fritz of Aberdeen, South Dakota. The decedent went to see Mr. Maloney at his law office on April 16 or 17, 1972,

and expressed a desire to have a new will drawn. He told Mr. Maloney about the prior will and codicil and how he wanted his new will to read. Mr. Maloney had never met Mr. Evans. Mr. Maloney drew up the will and it was executed by Mr. Evans on April 19, 1972, and witnessed by Maloney and his legal secretary, Modesta Schnoor.

Apparently because of the fact that the will he had drawn revoked a past will and because Mr. Evans was in his mid-80s, Mr. Maloney suspected that there could possibly be a will contest in the future where Mr. Evans' testamentary capacity might be challenged. In an attempt to prove Mr. Evans' testamentary capacity, Mr. Maloney had Mr. Evans return to his office on May 18, 1972. He asked Mr. Evans some very leading questions about the extent of Mr. Evans' property, his relatives, and his state of mind. Mr. Evans then gave his unsworn responses. Mr. Maloney had hired a court reporter who took the entire conversation down in shorthand and then transcribed it. The statements were later introduced and admitted at trial.

At the trial, Mr. Maloney took the stand on behalf of the proponent. He testified not only as to uncontested matters, such as execution and attestation of the will, but also as to his impressions and observations about Mr. Evans' competency and mental capacity to execute the will. His testimony covered matters which were highly contested and went to the very heart of the lawsuit. He was then subjected to a most forceful cross-examination by Mr. Douglas Bantz, the attorney for the contestants.

There would have been nothing improper at all about Mr. Maloney testifying if it had not been for the fact that he and his partner, Mr. Fritz, were at the same time representing the proponent of the will at the trial. While it is true that Mr. Fritz conducted the direct examination of Mr. Maloney and handled the bulk of the trial, Mr. Maloney was listed as one of the attorneys of record for the proponent and began the trial by offering the 1972 will to the court for probate.

What Mr. Maloney did was to take the stand and testify as to

the highly contested matter of Mr. Evans' competency to execute the 1972 will, while at the same time he and his partner, Mr. Fritz, were representing the proponent of the 1972 will. This constitutes a grave breach of professional ethics. Such action is specifically covered by the Code of Professional Responsibility of the American Bar Association. This Code has been adopted by the State Bar of South Dakota and has been approved by this court. The Code is set out in full as an appendix to SDCL 16-18. DR 5-101(B) and 5-102 are the relevant sections. DR 5-101(B) is very clear in its language and it states as follows:

> "A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
>
> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
>
> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

The rationale for this rule is simple and is well illustrated in the case at bar. Mr. Maloney's testimony went to the competency of Mr. Evans to make the 1972 will. If ultimately the proponent did prevail and the will was admitted to probate, Mr. Maloney and his firm would be entitled to probate a rather sizeable estate. If the will was not admitted to probate, Mr. Maloney would not

have the opportunity to render further professional services to the Evans estate. The conflict of interest presented in this situation is all too obvious. Mr. Maloney could not be an effective witness because he had a direct interest in the outcome of the lawsuit. The roles of an advocate and a witness are totally inconsistent, and yet Mr. Maloney attempted to assume both roles at the same time. We cannot tolerate even the slightest appearance of impropriety if the law is going to continue to remain an honored and respected profession.

At this point, we might simply say that a breach of professional ethics occurred and leave it at that; however, this is the second time in less than a year that this impropriety has occurred in a case on appeal before this court. See In Re Estate of Melcher, 1975, 89 S.D. 253, 232 N.W.2d 442. This simply cannot be allowed to continue. Besides the disciplinary rules cited above, there is also a provision in the evidence section of our Compiled Laws which goes to the problem of attorneys testifying as to contested matters. SDCL 19-1-3 states:

> "When an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial. This section shall not apply when such attorney's testimony is offered in answer to evidence received on behalf of the other party and it shall appear to the satisfaction of the court that such attorney had no reason to anticipate the necessity of his being a witness. Neither shall this section apply to state's attorneys and the attorney general and their deputies when engaged in the discharge of official duties." (emphasis supplied)

The above section of the Compiled Laws originated in Supreme Court Rule, Part 2, Rule 29, 1919. It may very well have been promulgated by this court in reaction to the testimony of an attorney in the case of Johnson v. Shaver, 1919, 41 S.D. 585, 172 N.W. 676. Regardless of its origin, SDCL 19-1-3 makes this problem a matter of evidence, not simply a matter of ethics. Therefore, we are hereby making it incumbent upon the judges of

the circuit courts of this state to enforce this provision. Henceforth, if an attorney testifies for his client as to contested matters, neither he nor any member of his firm will be allowed to represent that client at any further proceedings directly relating to that case. If for some reason the attorney does continue to represent the client after becoming a witness, his testimony will be considered incompetent and stricken from the record.

In the instant case, we will consider the contestants' challenge as to the sufficiency of the evidence without reference to the testimony of attorney Dennis Maloney. We will also not consider the unsworn statement of Richard T. Evans except those statements which contestants refer to as strengthening their case against the 1972 will.

Contestants' first contention is that the court erred in shifting the burden of proving the decedent's mental capacity to execute a will from the proponent to the contestants. It has been held by this court without exception that the proponents of a will have the burden of proving testamentary capacity. In Re Estate of Melcher, supra; Johnson v. Shaver, supra; In Re Estate of Anders, 1975, 88 S.D. 631, 226 N.W.2d 170. From the record we are satisfied that the burden of proving Mr. Evans' testamentary capacity was placed squarely on the proponent in this case.

The question of whether this burden was met is raised by contestants' second point. They claim that the court erroneously found that Richard T. Evans was competent to execute the will on April 19, 1972. Our review, of course, is governed by SDCL 15-6-52(a) and In re Estate of Hobelsberger, 1970, 85 S.D. 282, 181 N.W.2d 455. We will not set aside the findings of the lower court unless they are found to be "clearly erroneous" based upon the record. For the reasons stated above, we will review the evidence without regard to the testimony of Mr. Maloney or the unsworn statements of Mr. Evans which are favorable to the proponent.

In determining the question of the testamentary capacity of the decedent, we will use the standard previously set down by this court in Petterson v. Imbsen, 1923, 46 S.D. 540, 194 N.W. 842.

"The law requires soundness of mind, but by this is not necessarily meant that degree of intellectual vigor which one has in youth or that is usually enjoyed by one in perfect health. It is not necessary that one should have sufficient capacity to make contracts and do business generally nor to engage in complex and intricate business matters, but for the purpose of making a will one has a sound mind who, without prompting, has full and intelligent knowledge of the act engaged in, and full knowledge of the property he possesses, and is capable of comprehending its condition and intelligent perception and understanding of the disposition he wishes to make of it and of the persons that he desires shall be recipients of his bounty and gifts, and to recollect and apprehend the nature of the claims of those who are excluded from participating in his bounty." 46 S.D. at 546, 194 N.W. at 844.

The record reveals that the decedent was 87 years of age at his death and was 85 years of age when he executed the 1972 will. He was a bachelor and had spent almost all of his years farming in Lincoln Township, Brown County. At death, his only relatives were his cousin, Wesley Thomas, his sister-in-law, Mrs. W. O. Evans, and his second cousin, Mrs. Rosella Jones who is one of the contestants. In 1964 decedent suffered a stroke which partially paralyzed one side of his body. He continued to live on his farm, however, until 1971. In January of 1971 he became a resident of the Americana Nursing Home in Aberdeen. A short time later he became seriously ill and was admitted to St. Luke's Hospital where he recovered and returned to the Americana Home. He was residing at the Americana when the 1972 will was executed.

Sometime early in 1971 Mrs. Evans and the Joneses suspected that the decedent could no longer handle his business affairs. They hired an attorney who petitioned the court to declare Richard T. Evans an incompetent and impose a guardianship over his estate. An order to this effect was entered on March 31, 1971, and the First National Bank of Aberdeen was appointed guardian of the estate. The decedent was apparently given no notice of the proceedings. In June 1971, the Bank held an auction

where decedent's personal property on the farm was sold off and the assets invested. The evidence indicates that decedent was angry and hurt when he finally found out about the guardianship. He was particularly upset when he learned of the sale of his personal property. He blamed Mrs. Evans and the contestants for the guardianship and the sale. This seems to be what precipitated his decision to write a new will.

The 1972 will was not really a radical departure from the 1963 will and the 1968 codicil. Under the 1963 will there were the following bequests: $5,000 to the First Wesleyan Methodist Church of Aberdeen; $5,000 to Father Flanagan's Boys' Home, Boys Town, Nebraska; $5,000 to the Crippled Children's Hospital, Sioux Falls; $5,000 to a cousin, W. R. Thomas; $10,000 to the contestants, Roland and Rosella Jones; $5,000 to Mrs. W. O. Evans; and $5,000 to decedent's sister, Mary C. Lewis. The rest and residue of the estate was left to legatees who survived the decedent. The First National Bank of Aberdeen was named executor of the estate. In the 1968 codicil the legacy to Mary C. Lewis was revoked because she had died and the other legacies were increased in amount.

Under the 1972 will, proponent William Maynard was appointed executor. Mrs. Evans and Mrs. Jones were each to receive a bequest of $5,000. Of the rest and residue of the estate, one-half was to be divided between the Crippled Children's Hospital, McCrossan Boys' Ranch, and Father Flanagan's Boys' Home. The other one-half of the residue was bequeathed to Lincoln Township to be expended in the best interest and welfare of its residents.

Contestants contend that the preponderance of evidence supports the view that Richard T. Evans was incompetent to execute a will on April 19, 1972. We cannot agree. Even excluding the testimony of attorney Maloney, the evidence supports the trial court's finding that decedent was fully competent when he executed the will. None of contestants' witnesses could testify as to Evans' mental state at the specific time frame in which the will was executed. Mrs. Evans and Mrs. Jones testified that Evans would not communicate with them when they would go to see him

at the Americana Home. As previously stated, Evans blamed them for selling his property and placing his estate under guardianship. We can well understand why decedent might not be too outgoing when they tried to visit with him. In addition, it should be noted that Mr. and Mrs. Jones lived in Minnesota and visited the decedent very infrequently.

Contestants argue that decedent did not know the nature and extent of his property. They point to a statement made by decedent in his transcribed interview with Maloney. In answer to a question about his property, Mr. Evans stated, "I ain't got much property. It is all personal property." Contestants maintain that this indicates that he did not know the extent of his property. We do not think this is the case. At the time when the statement was made, Evans had sold all of his real property and all he had left were C.D.s, stocks, bonds, etc. It is quite obvious that when he spoke of property he was referring to real property.

Decedent did admit that he did not remember much of what transpired during his illness in the winter of 1971. However, this is not relevant because the will was executed more than one year later and there was testimony that decedent had fully recovered from his illness by May of 1971.

Contestants also point to decedent's bequest to Lincoln Township as evidence of his incompetence. They contend that this is an unnatural bequest. We cannot agree. Decedent had no lineal descendants. He had farmed in Lincoln Township for many years and most of his good friends lived in Lincoln Township. There is evidence that he wanted to leave some of his estate to the Township to better the lives of the people living there. We hardly consider the sentiment expressed by this bequest as evidence that the man was incompetent.

Nor does the fact that a guardian was appointed for his estate convince us that decedent lacked testamentary capacity. The guardianship was over his estate, not his person. There is also evidence that the guardianship was imposed because of his physical incapacity rather than any mental incapacity.

In contrast to contestants' evidence, proponent's evidence strongly suggests that Mr. Evans was competent to execute his 1972 will. Deloris Inman, the administrator of Americana, testified that she saw Evans just about every day and that his mind was clear and he was alert in April, 1972. In addition, Evans' good friends Clarence Haskell and Louis Miller testified as to his competence.

We think that it is very significant that nine days before execution of the will, decedent's personal physician, Dr. King, instructed Mrs. Inman that decedent should be allowed to leave the grounds of Americana and travel downtown unaccompanied. Thereafter, decedent went downtown and bought a three-wheeled bicycle and was seen at various times pedaling around the streets of Aberdeen. Mrs. Inman testified that Evans always returned to Americana at mealtime and no one ever had to go looking for him.

The evidence preponderates in favor of the proponent on this point. After a careful review of the record, we hold that the finding of the lower court that Richard T. Evans had testamentary capacity on April 19, 1972, was not "clearly erroneous."

Contestants argue that the 1972 will was also invalid because of the undue influence of attorney Maloney. Unlike the question of competency, the burden of proving undue influence is on the contestants of a will. Johnson v. Shaver, supra. Contestants have not sustained this burden. They point to the interview with Mr. Maloney on May 18, 1972, as proof that he was unduly influencing Mr. Evans. What they overlook is the fact that the interview was conducted almost one month to the day after the will was executed. Maloney and Evans had never even met until the will was drawn up.

Because the proponent clearly proved testamentary capacity and the contestants failed to prove undue influence, we hold that the court correctly ordered that the 1972 will be admitted to probate.

As to the second appeal, No. 11658, on February 10, 1971,

Richard T. Evans sold 400 acres of his land to Charles Maynard and his wife, Sharon Maynard, on a contract for deed. Charles Maynard is the son of the proponent William Maynard. The contract was executed by the parties on February 12, 1971, in the law office of attorney Robert Miller of Aberdeen. Under the contract, the land was to be sold for $70 per acre with 5% yearly interest on the unpaid balance. After Evans' death, the Maynards agreed to pay the unpaid balance in return for conveyance of the property by the executor of the Evans estate. The court order allowed William Maynard as executor to convey the property to Charles and Sharon Maynard.

Contestants argue that the court erred in entering the order because Evans was not competent to execute the contract for deed on February 12, 1971. The test for capacity to contract for the sale of real property is somewhat different than the test for testamentary capacity quoted above. As we held in Shearn v. Anderson, 1951, 74 S.D. 41, 48 N.W.2d 821:

> "The rule regarding the sufficiency of the evidence to establish incompetency has been stated by this court as follows: 'Impairment of the faculties by disease or old age will not invalidate a deed if the party executing it had sufficient mental capacity to understand his act. It must be shown that the grantor did not have sufficient mind and memory to comprehend the nature and character of the transaction. Mental weakness that does not amount to inability to comprehend and understand the nature and effect of the transaction is not sufficient to invalidate a deed.' Meyer v. Kiecksee, 68 S.D. 43, 298 N.W. 261; Egan v. Shindelbower, [S.D., 41 N.W.2d 225] supra." 74 S.D. at 43, 48 N.W.2d at 822.

Contestants place reliance upon SDCL 30-19-6 which provides:

> "If, upon hearing in the county court, as provided in § 30-19-5, the right of the petitioner to have a specific performance of the contract is found to be doubtful, the court must dismiss the petition without prejudice to the

rights of the petitioner, who may, at any time within six months thereafter, proceed in the circuit court to enforce a specific performance thereof."

They argue that specific performance of the contract is doubtful because Richard T. Evans' mental competence on February 12, 1971, is doubtful. Therefore, under the terms of the statute, they contend that the court should have denied the petition.

Our review of this question cannot be govened by the "clearly erroneous" rule which we employed above. The court made no findings of fact as to the mental competence of the decedent on February 12, 1971. No separate evidentiary hearing was ever held on this question. A hearing was held, but it only amounted to the presentation of unsworn arguments of the parties' respective counsel. No evidence was taken at that time. The only evidence which goes to this question was presented at the trial of the will contest. That evidence is quite conflicting. Attorney Robert Miller, the scrivener of the contract for deed, testified that while he initially had doubts about the decedent's mental state, he became convinced that the man was competent after asking him a few questions. On the other hand, there is evidence that the decedent was very ill at this time. On February 16, 1971, four days after execution of the contract, the decedent was hospitalized with what was diagnosed as arteriosclerotic cardiovascular and cerebrovascular disease and marked cardiac decompensation. The hospital notes for February 16th and 17th show that Evans was in a very confused state of mind.

Another point in dispute is the extremely low selling price for the land and the very favorable rate of interest on the unpaid balance. Contestants claim that this shows that decedent did not have the presence of mind to understand the nature of the transaction. The Maynards counter by saying that they had been good friends of Evans over the years and the low selling price and interest rate reflected his gratitude for their friendship. Contestants point to the evidence which shows that Evans had promised to sell some of the land in this transaction to Elmer Blake, a neighbor, and that Evans was not a man to go back on his word. The implication, of course, is that Evans did not know what he

was doing when he signed the contract on February 12, 1971.

On the record presented, we cannot determine which evidence preponderates. As we noted, this factual issue has never been squarely presented to the trial court. Therefore, we hold that the court erred in granting the petition on the basis of the evidence presented at the will contest. Specific performance of the contract is doubtful under SDCL 30-19-6, and therefore the petitioner has the recourse of suing for specific performance in the circuit court. There the evidence can all be presented, it can be heard, and specific findings of fact can be made.

Appeal No. 11576 is affirmed; appeal No. 11658 is reversed and remanded.

WINANS, DOYLE and COLER, JJ., and HERSRUD, Circuit Judge, concur.

HERSRUD, Circuit Judge, sitting for WOLLMAN, J., disqualified.