Doyle D. ESTES, Tom Timmons, F.M. Timmons, Thomas G. Timmons and Craig M. Timmons, Plaintiffs and Appellees,

v.

Roger P. MILLEA and Prudence S. Millea, husband and wife; Reese Williams; Security Inc. Realty, a South Dakota Corporation; Norwest Bank Black Hills N.A.; First Western Federal Savings and Loan Association; South Canyon Townhouse Apartments, a South Dakota General Partnership; and Patrick–Lewis Development Corporation, a South Dakota Corporation, Defendants and Appellants.

No. 16958.

Supreme Court of South Dakota.

Argued Sept. 17, 1990.

Decided Dec. 19, 1990.

Anthony Crawford, Rapid City, for plaintiffs and appellees.

Jon J. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, for defendants and appellants.

GILBERTSON, Circuit Judge.

## ISSUE

DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR TIMMONS ON THE BASIS OF COLLATERAL ESTOPPEL?

## PROCEDURAL HISTORY

The procedural aspects of this case are complex and not relevant to the issue on

appeal. Nevertheless, a brief review will inform the reader of each party's position in the litigation.

The Traveler's Insurance Company initiated this suit to foreclose a real estate mortgage. Defendant Reese Williams (Williams) cross-claimed against defendants Tom Timmons, F.M. Timmons, Thomas G. Timmons, Craig Timmons (collectively, Timmons) and Doyle D. Estes (Estes) to set aside deeds in their name for a portion of the real estate. Williams claimed that certain transactions were loans rather than conveyances of the realty and that Timmons and Estes were guilty of deceit. Defendant Security Inc. Realty (Security) cross-claimed for foreclosure of its mortgage to secure payment of a real estate commission. Timmons and Estes then bought out Traveler's interest and were assigned its position and interest. The circuit court granted Estes' and Timmons' motion for partial summary judgment on Williams' cross-claim to set aside the deeds on the claim of deceit. The basis for this ruling was collateral estoppel.

## FACTS

This case involves numerous real estate transactions. It concerns 320 acres of land located near Rapid City which Williams once owned.

In October of 1980, Williams acquired the 320 acres by trading real estate with Roger Millea. This trade was handled by Security, a real estate firm. Since this was mainly a noncash transaction, Williams signed a note for $43,875.00 in favor of Security for the balance of its commission in arranging this transaction. The note was payable October 10, 1985, or upon Williams' sale of the 320 acres, whichever occurred first.

When Williams later faced financial difficulties, he secured funds from Richard Matheison (Matheison) and Lloyd Rypkema (Rypkema). In consideration for this transaction, Matheison and Rypkema required that Williams convey to them by warranty deed, his title to the 320 acres. This was done on January 15, 1981. The same day Matheison and Rypkema, as vendors, granted Williams, as vendee, a contract for deed to repurchase the realty. The contract called for Williams to pay Matheison and Rypkema in full by October 20, 1981.

On February 2, 1981, Williams entered into an agreement with Timmons to purchase shares of stock in their retail liquor establishment. When Williams could not secure the necessary cash to make the payments on this agreement, a second agreement was drafted where Timmons would receive a portion of the 320 acres. Timmons' attorney, Estes, learned about Williams' transactions with Rypkema and Matheison through a title search.

Williams and Timmons agreed to trade Timmons' stock for 160 acres of the realty. Williams claims that Estes required Williams to deed the entire 320 acres to Timmons by quitclaim deed. Timmons granted Williams an option to repurchase the property. Williams was financially unable to exercise this option prior to its expiration on March 10, 1982.

On December 23, 1981, Matheison and Rypkema quitclaimed their title in the real property to Timmons in exchange for the balance due them from their original advance to Williams.

Security, the realtor which handled the original trade between Williams and Millea, became aware of the later transactions with Matheison, Rypkema and Timmons. Based on its agreement with Williams that its commission would be due when Williams sold the realty, Security filed suit (Civ. 82–919) against Williams on December 15, 1982, to collect its commission for the original trade.

In April of 1983, Timmons conveyed 80 acres of the realty to Estes.

In order for Security to collect its commission in its suit against Williams, it had to prove that Williams sold the realty to Matheison and Rypkema in January of 1981. Williams responded to an interrogatory Security served upon him:

INTERROGATORY NUMBER 7: Did you sell, transfer, or convey all or any part of the real estate listed in the promissory note marked Exhibit A? If you

did so, state to whom you sold the property, the date of the sale, and the amount you received by way of cash, property, or any other consideration whatsoever.

ANSWER: Yes, January 15, 1981, property was SOLD to Lloyd Rypkema and Richard L. Matheison. Consideration received was Twenty–Seven Thousand Five Hundred Dollars ($27,500.00). (emphasis added).

Later in the proceeding, Williams' then attorney [1] attempted to argue to the court by letter brief that the admission in the interrogatory had been a mistake and that no sale had actually taken place.[2] However, no supplemental answer was ever filed to the interrogatory nor any other form of testimony under oath.

Based on this interrogatory answer, the circuit court in Civ. 82–919 held that a sale occurred between Williams and Rypkema and Matheison. That decision was never appealed.

In the case currently before this court on appeal, Williams seeks to set aside the deeds to Timmons and Estes based on alleged "deceit since the transactions were intended as loans secured by mortgages rather than absolute conveyances." The circuit court granted summary judgment to Timmons and Estes on the basis of collateral estoppel. The circuit court held that Williams was bound by the decision in Civ. 82–919 and that an actual sale had taken place rather than an illegal "shylock" loan as Williams alleged.

## LEGAL ANALYSIS

The issue of collateral estoppel as a basis for summary judgment in land transaction cases is not a novel question for this court. *Melbourn v. Benham*, 292 N.W.2d 335 (S.D.1980); *Cook v. Rezek*, 296 N.W.2d 731 (S.D.1980); *Staab v. Cameron*, 351 N.W.2d 463 (S.D.1984). The underlying issue is whether there remain material facts which

would make summary judgment inappropriate. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968). Land transactions such as the one in this case are often of a complex nature. However, the issue is not the existence of factual disputes, but whether the land transaction results in the existence of facts *material* to the question of the appropriateness of summary judgment. *Staab, supra*, 351 N.W.2d at 467 (Henderson, J. concurring).

While collateral estoppel does not bar a cause of action, it does bar relitigation of an essential fact or issue involved in the earlier suit. *Melbourn, supra*. This court has adopted a four-part test which must be met before the doctrine can be applied: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication? *Cook, supra; Staab, supra*.

The issue the circuit court decided in Civ. 82–919 was whether Williams sold the realty on January 15, 1981, prior to any dealings with Timmons and Estes. For Williams to prevail he must establish that he owned or had an interest in the land at the time of the Timmons transaction. Otherwise, Williams cannot establish that he was damaged by Timmons' actions toward him. Thus, the issue of whether or not a sale occurred on January 15, 1981, is the same in both cases and the first part of the collateral estoppel test is met.

In addition, there was a final judg-

---

1. Williams employed different counsel to represent him in Civ. 82–919 and 82–920 than he has employed to represent himself in the case that is now before us on appeal.

2. Estes and Timmons argue that a fair reading of the letter of Williams' attorney to the court

does not attempt to recant his previous admission in his interrogatory answer that a sale had occurred. Based on our disposition of the case, it is not necessary for us to interpret this document to decide this point.

ment on the merits.[3]  Therefore the second criteria has been established.

Williams argues that the third criteria has not been met, since Security prosecuted the 1982 litigation as plaintiff and Timmons and Estes were not parties to that action. This court has held that collateral estoppel may be applied in a civil action when a new defendant affirmatively raises this defense to bar a plaintiff from reasserting issues the plaintiff has actually previously litigated and lost on the merits against another defendant. *Staab, supra.* "Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects ... the aura of the gaming table ... 'hardly a worthy or wise basis for fashioning rules of procedure.'" *Black Hills Jewelry Mfg. v. Felco Jewel Ind.*, 336 N.W.2d 153, 158–159 (1983) (citations omitted).

The final criteria in determining the applicability of collateral estoppel is whether the party against whom the plea is asserted had a full and fair opportunity to litigate the sale issue in the prior adjudication.

Williams claims that he was denied this right since his then attorney attempted to recant, by letter brief, Williams' interrogatory admission that a sale had been made on January 15, 1981. Williams claims the circuit court unfairly ignored this additional "evidence."

■ With exceptions which are inapplicable here, an attorney cannot testify on behalf of his client. SDCL 19–1–3, *Jones v. S.D. Children's Home Soc.*, 90 S.D. 126, 238 N.W.2d 677 (1976).[4]  Further, the communication with the circuit court was not in the form of an affidavit nor under oath. It was merely argument in a trial brief. This is clearly not evidence and, thus, Williams' interrogatory answer stands uncontradicted. Oratory and arguments of counsel, however eloquent, will not escape a summary judgment absent facts to avoid such a disposition of the case. As such, the circuit court was correct to accept the interrogatory answer as a basis for its decision.

Williams argues that if collateral estoppel is applied he will suffer grievous finan-

3. At the time Security filed its suit against Williams in 1981, it also filed a second suit against him alleging that it was due its commission based on the December 15, 1981, deed between Williams and Timmons (Civ. 82–920). Although the court entered a memorandum opinion this matter was never taken to a final judgment and therefore is not an appropriate basis for the application of collateral estoppel.

However, in the Civ. 82–920 action, Williams apparently defended himself by alleging that the December 15th deed could not constitute a sale since he had previously sold the property to Matheison and Rypkema on January 15, 1981. This position is clearly inconsistent with his present argument to this court and his purported argument to the circuit court in Civ. 82–919. A party to an action may not make a voluntary decision to proceed in a subsequent inconsistent manner when they find themselves in an undesirable position as a result of a legal posture. "Judicial estoppel bars such gamesmanship." *Gregory v. Solem*, 449 N.W.2d 827, 832 n. 8, (S.D.1989) citing *Federal Land Bank of Omaha v. Johnson*, 446 N.W.2d 446 (S.D.1989); *Warren Supply v. Duerr, Pliley, Thorsheim Dev.*, 355 N.W.2d 838 (S.D.1984).

4. SDCL 19–1–3 states:

When an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial. This section shall not apply when such attorney's testimony is offered in answer to evidence received on behalf of the other party and it shall appear to the satisfaction of the court that such attorney had no reason to anticipate the necessity of his being a witness. Neither shall this section apply to state's attorneys and the attorney general and their deputies when engaged in the discharge of official duties.

A violation of this prohibition can result in serious consequences for the attorney and his unfortunate client. It can result in the disqualification of the attorney from further participation in the case. In the alternative, the attorney's testimony is considered incompetent and is stricken from the record. *Jones, supra.* Further, the attorney may inadvertently attack his own client's credibility by testifying in a manner which conflicts with the client's testimony. *See* South Dakota Rules of Professional Conduct, Rule 3.7 "Lawyer as Witness" (Comment). Thus, it becomes a matter of evidence and not simply a matter of ethics. *Jones, supra.*

As a violation of Rule 3.7 of an attorney's required professional conduct, ethics is also involved and a violation may result in an unwanted appearance before the grievance committee. We do not view counsel's letter brief to the circuit court as anything more than legal argument. Therefore, this prohibition was not violated.

cial loss at the hands of individuals he characterizes as "shylocks." He cites authority from Minnesota for the proposition that collateral estoppel is a flexible doctrine which will focus on whether its application would work an injustice on the party against whom estoppel is urged. *Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608 (MN.1988). This view of the use of collateral estoppel is consistent with the fourth requirement for its implementation, whether the party against whom the plea is asserted had a full and fair opportunity to litigate the issue in the prior adjudication.

The rationale for the use of such doctrines as collateral estoppel and res judicata goes beyond the interests of the parties to the litigation. The underlying rationale for their implementation is that public policy, judicial orderliness, economy of judicial time, and the interest of litigants as well as the peace and order of society all require that stability should be accorded judgments. Controversies once decided on their merits should remain in repose, and inconsistent judicial decisions should not be made on the same set of facts. There must be an end to litigation which, without the doctrines, would be endless. *Adam v. Adam,* 254 N.W.2d 123 (S.D.1977).

There may well be a case where the facts are of such a compelling nature that the use of collateral estoppel cannot be justified. Whether this additional limitation upon the use of the doctrine will be recognized in South Dakota need not be decided by us at this time since this is clearly not such a case.

## CONCLUSION

Persons enter into land transactions for a multitude of reasons. A common inducement for such a course of action is the hope of financial gain. As the past decade in this state has demonstrated, often the hope for gain fades into the reality of an investment gone sour and a loss incurred. At such a point, it is not the function of the judiciary to require a third party not responsible for the result, to rescue the disappointed investor from "what may in ret-rospect appear to have been a bad bargain." *Cook,* 296 N.W.2d at 733.

The decision of the circuit court is affirmed.

WUEST, and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

GILBERTSON, Circuit Judge, for MILLER, C.J., disqualified.

HENDERSON, Justice (concurring in result).

This Court has cautioned against the excessive use of res judicata. *Lewton v. McCauley,* 460 N.W.2d 728 (S.D.1990) (Sabers, J., concurring specially); *Bruntz v. Rutherford,* 451 N.W.2d 290 (S.D.1990) (Sabers, J., concurring specially as joined by Chief Justice Miller). I also believe we should caution against the excessive use of collateral estoppel. Since each case is so fact determinative, I do agree with the end result in the present case. Here, we hold that Williams is collaterally estopped; this party, Williams, is barred from reasserting issues that were actually previously litigated and lost on the merits against another defendant. Williams was a party to previous litigation who had an opportunity (and lost) on an issue now sought to be raised in the instant litigation.

However, the doctrine of collateral estoppel is not inalterable. We should not impose it, in all instances. *Bank of Hoven v. Rausch,* 449 N.W.2d 263 (S.D.1989); *Dow v. Noble,* 380 N.W.2d 359 (S.D.1986); *Arcon v. South Dakota Cement Plant,* 412 N.W.2d 876 (S.D.1987). It is merely a legal principle which seeks to end litigation. But the four factors set forth in *Cook,* and *Staab,* the progenitors of later cases in this Court, must be dissected and applied to the facts. With this in mind, the collateral estoppel doctrine should not be invoked without regard to dissimilar factual situations.

Broad, sweeping statements relating to public policy, judicial orderliness, and economy of judicial time should not be the polestar of the required use of collateral

estoppel. Private rights should not be shunted aside in the name of adjectives. As professorial textbook writers have expressed: "Achieving efficiency often threatens the process imperatives of appellate justice. Stated in general terms, the risk of efficiency is that the appellate system will be prevented from *giving proper heed to the particulars of cases*." Justice On Appeal, by Professors Carrington, Meador & Rosenberg, page 14, West Publishing Co., 1976.* (emphasis supplied mine).

We have previously established the four criteria test and we should use it as a polestar, in each case.

---

* The Bench and the Bar should realize the business of the courts is not economy, expediency or efficiency—it is justice. *State v. McComsey*, 323 N.W.2d 889, 894 (S.D.1982), Henderson, J., dissenting.