ARCON CONSTRUCTION CO., INC., a Minnesota Corporation, and Hardrives, Inc., a Minnesota Corporation, Plaintiffs and Appellees,

v.

SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION, Defendant and Appellant.

No. 14510.

Supreme Court of South Dakota.

Argued Feb. 4, 1985.

Decided April 3, 1985.

Ronald G. Schmidt of Schmidt, Schroyer, Colwill & Zinter, Pierre, for plaintiffs and appellees.

Chester A. Groseclose, Jr. and Wayne F. Gilbert, Sp. Asst. Attys. Gen., Pierre, for defendant and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

WUEST, Acting Justice.

This is an appeal from a money judgment against the South Dakota Department of Transportation (Department) arising from a road construction contract performed by Arcon Construction Company (Arcon). We affirm.

On May 30, 1978, Arcon entered into a contract with Department for the construction of nine and one-half miles of U.S. Highway 281, known as the "Brown-Spink Project." Arcon then contracted with the South Dakota Cement Plant (Plant) for the delivery of approximately 8,900 tons of cement to the job site by truck. Plant personnel told Arcon they intended to deliver the cement to Aberdeen via the Milwaukee Railroad, and truck it from the Aberdeen terminal to the job site. The construction contract carried a completion date of November 1, 1978, and Arcon received notice to proceed on the project on June 23, 1978. The Cement Plant, however, was unable to deliver the cement called for under its contract with Arcon because of a cement shortage. The failure of Plant to deliver the cement rendered Arcon unable to complete the project in 1978. Recognizing that the paving could not be completed in 1978, Department did not charge any working days to the "Brown-Spink Project" during the 1978 construction season. Arcon requested a new completion date of November 1, 1979, for the project. Department granted them a 71-day extension commencing April 16, 1979. On December 4, 1978, Arcon advised Plant that it expected to begin paving on the "Brown-Spink Project" approximately June 15, 1979, and requested that it be advised of any delivery problems during the 1979 construction season. On April 18, 1979, Arcon personnel met with Plant employees for the purpose of discuss-

ing shipments to Arcon's project during the 1979 season. Arcon again advised Plant that it intended to begin paving the "Brown-Spink Project" on or about June 15, 1979.

In April of 1979, Arcon bid on a similarly sized project for paving a runway at the Sioux Falls airport. The Sioux Falls airport project had a completion date of October 1, 1979. It had a liquidated damages provision for $11,000.00 per day, whereas the "Brown-Spink Project" had a provision for liquidated damages of $500.00 per day. From May 18, 1979, until October 2, 1979, Arcon performed very little work on the "Brown-Spink Project." The contract between Department and Arcon contained a provision for reimbursement to Arcon of increased costs, including freight rates and fuel costs, which were unexpected at the time of bidding. It also contained a provision for extension of the completion date if there was a delay in the work as the result of unanticipated delays, beyond the contractor's control, in the delivery of critical material.

Department, believing the contract had not been timely performed, assessed liquidated damages against Arcon in the sum of $40,500.00 for delay in completion of the contract.

Arcon sued Plant for failure to deliver the cement under their contract. *See Arcon Constr. Co. v. South Dakota Cement Plant*, 349 N.W.2d 407 (S.D.1984). Arcon sought recovery from Plant for the liquidated damages assessed by Department for failure to complete the construction contract on time and also for increased freight rates and fuel surcharges. Plant defended against these claims, alleging that Arcon's assumption of the Sioux Falls airport project and subsequent equipment scheduling decisions were the reasons Arcon was unable to complete the "Brown-Spink Project" on time. The jury in the *Plant* case awarded Arcon nothing on the liquidated damages claim of $40,500.00. On the question of Arcon's claim for the increased freight rates and fuel surcharges, the *Plant* jury awarded Arcon $38,173.00.

Arcon then commenced suit against Department seeking to recover, inter alia, increased freight rates and fuel surcharges for 1979, alleging that its total claim was originally $70,249.44 of which $38,173.00 had been awarded in a "separate action," and that it is therefore entitled to the difference of $32,076.44. Arcon later amended its claim to $59,154.05 which, its lawyer explained, was the full amount sought in the *Plant* case, including the amount awarded in that case, less approximately $11,000.00 which represented the "claim of another subcontractor."

The trial court in this case took judicial notice of the transcript and pleadings in *Plant's* case. Twice prior to trial and again at the close of the evidence, Department moved to dismiss this case on the grounds of collateral estoppel, urging that the issues raised by this case had already been tried in the *Plant* case. The motions were denied. The same motion was renewed subsequent to trial and denied. In the present action, Department used the same defense as Plant, i.e., that Arcon's failure of timely completion was due to the fact that their equipment was committed to the Sioux Falls airport job. Arcon's claim in both cases was that non-delivery of cement caused the failure of timely completion. The jury returned a verdict for Arcon for the $40,500.00 assessed as liquidated damages and the freight rates and fuel surcharges in the amount asked, $57,-164.05.

■ Department claims that the trial court erred in failing to apply the doctrine of collateral estoppel. There must, however, be a final unreversed judgment or decree of a court of competent jurisdiction before the doctrines of res judicata, collateral estoppel, or issue preclusion apply. *Black Hills Jewelry Mfg. v. Felco Jewel Ind.*, 336 N.W.2d 153 (S.D.1983); *Golden v. Oahe Enterprises, Inc.* 90 S.D. 263, 240 N.W.2d 102 (1976); *Keith v. Willers Truck Service*, 64 S.D. 274, 266 N.W. 256 (1936).

■ In *Arcon Const. Co., supra,* we reversed the costs and damages. This included the award for increased freight rates

and fuel surcharges arising out of the "Brown-Spink Project." The jury did not award any liquidated damages for the "Brown-Spink Project," but the damage issues were reversed. Since there is no final unreversed judgment, the doctrine of collateral estoppel or issue preclusion has no application in this case. Counsel for appellee assured us during oral argument, if we should affirm, no further claim for damages awarded in this action will be brought in *Arcon v. Cement Plant* upon retrial. We hold Arcon cannot recover damages awarded in this action, upon retrial of *Arcon v. Cement Plant*.

Department claims that Arcon's evidence was insufficient to prove that there was in fact a rail car shortage which deprived it of cement deliveries in the spring and summer of 1979, and that it could, with reasonable diligence, have finished the project sooner than it did.

■■■ On appeal, we review the evidence in the light most favorable to the prevailing party and resolve conflicting evidence in favor of the verdict. *See, e.g., Hoffman v. Royer*, 359 N.W.2d 387 (S.D. 1984); *Stoltz v. Stonecypher*, 336 N.W.2d 654 (S.D.1983); *Zee v. Assam*, 336 N.W.2d 162 (S.D.1983); *Barnhart v. Ahlers*, 79 S.D. 186, 110 N.W.2d 125 (1961); *Hullander v. McIntyre*, 78 S.D. 453, 104 N.W.2d 40 (1960).

Contrary to Department's claim of insufficient evidence of a rail car shortage, Plant records for May 16, 1979, disclose that Plant advised Arcon that every time it called there were no rail cars. The record also indicates that in May of 1979 Plant was trying to lease railroad cars to run on the Milwaukee rails. The official minutes of the South Dakota Cement Plant Commission (Commission) meeting for May 22, 1979, show a serious shortage of rail cars for terminal movement. Further, Plant met with Arcon on July 13, 1979, concerning the availability of rail cars for the "Brown-Spink project." Department was advised that as of July 30, 1979, there were only thirty rail cars in the entire Milwaukee Railroad cement car pool. Finally, the official minutes of the Commission meeting for

December 19, 1979, again establish a continuing rail car shortage.

Accordingly, we affirm the judgment of the trial court.

FOSHEIM, C.J., concurs.

HENDERSON, J., concurs specially.

WOLLMAN and MORGAN, JJ., dissent.

HENDERSON, Justice (specially concurring).

The majority opinion has moored, basically, its holding on the statement that "[t]here must, however, be a final unreversed judgment or decree of a court of competent jurisdiction before the doctrines of res judicata, collateral estoppel, or issue preclusion apply." I have no quarrel with such a holding. However, in concurring with the majority opinion, I wish to state that I would ground an affirmance on the premise that the *Cement Plant* case and the *Department of Transportation* case involve (a) different contracts, (b) different claims for damages due, (c) different parties, (d) different issues, and (e) different instructions to the jury in both cases because of (f) differing points of law. Therefore, the rule pronounced in *Black Hills Jewelry* should indeed be applied here; that is, that a matter which has had identical issues litigated may not be brought back before the court to be litigated again even though there is not privity of parties to the second litigation.

We must simply apply *Black Hills Jewelry* properly to the facts at hand. Appellee and appellant both offer *Black Hills Jewelry* as authority. As I view it, the *Cement Plant* case arose from a breach of cement sales contracts which sought rights and remedies under the Uniform Commercial Code. Before us, we now have the same plaintiff asserting a claim against the Department of Transportation for alleged wrongs, seeking redress under a totally different contract, namely, the Brown/Spink contract. This latter contract, and the breach thereof, led the jury to find that there was an unavailability of railroad cars for hauling the cement. A

shortage of cement at a plant in Western South Dakota is one thing; a delay of transporting cement in Eastern South Dakota is an altogether different matter. Therefore, collateral estoppel or issue preclusion is inapplicable as the issues in these two cases are readily distinguishable.

WOLLMAN, Justice (dissenting).

As the majority opinion makes abundantly clear, Arcon sought recovery in the *Cement Plant* case for the liquidated damages assessed by Department for failure to complete the construction contract on time and also for increased freight rates and fuel surcharges. Arcon was awarded nothing on the liquidated damages claim and only $38,173.00 on the increased freight rates and fuel surcharges claim. Arcon did not file a notice of review with respect to those issues. Accordingly, however infelicitously worded the dispositive paragraph in our opinion in the *Cement Plant* case may have been, 349 N.W.2d 407, 417, the fact remains that we could not have reversed the judgment with respect to those two issues. Accordingly, I would hold that Arcon was precluded by the judgment in the *Cement Plant* case from relitigating the issues in the case at bar and would reverse the judgment appealed from.

I am authorized to state that Justice MORGAN joins in this dissent.