ARCON CONSTRUCTION CO., INC., A Minnesota Corporation with its principal place of business at Mora, Minnesota, Plaintiff and Appellant, (No. 15092)

v.

SOUTH DAKOTA CEMENT PLANT, et al., Defendants and Appellants. (No. 15091)

Nos. 15091, 15092.

Supreme Court of South Dakota.

Argued Jan. 15, 1986.

Decided Feb. 26, 1986.

Ronald G. Schmidt, Schmidt, Schroyer, Colwill & Zinter, Pierre, for plaintiff and appellant.

Wayne F. Gilbert, Banks & Johnson, Rapid City, for defendants and appellants.

HERTZ, Acting Justice.

This is a discretionary appeal from an interlocutory order, denominated "omnibus order" entered by the trial court on July 19, 1985. Defendants (Cement Plant) appeal from certain portions of the order which is herein designated as Appeal # 15091. Plaintiffs (Arcon) also appeal from the same order, which is Appeal # 15092. Both of these appeals were consolidated for disposition.

This case has been on remand pursuant to our decision on May 2, 1984. *See: Arcon Const. Co. v. S.D. Cement Plant*, 349 N.W.2d 407 (S.D.1984). (For a more detailed factual statement, the reader is referred to our decision directing remand.) The issues raised will be addressed in the order argued before this court.

*Appeal # 15092 (Arcon):*

Our remand directed a retrial on the issue of damages only. There has been considerable activity since our remand, all were based on petitions for rehearing, including the trial court dated April 1, 1985. We have denied Arcon's request for reinstatement of the jury verdict, as well as the trial court's request.

Arcon, at the omnibus hearing, renewed its request for reinstatement of the verdict at the trial court level. The trial court denied this request and this appeal followed. Arcon also moved for permission to amend its complaint prior to the retrial. This motion to amend was also denied and is properly before us on appeal.

This court, under the present posture of this case, has no authority or power to reinstate the jury verdict as requested by Arcon. It has long been the rule in this court that when a case is finally decided and the remittitur has been returned to the lower court, which occurred here on June 7, 1984, this court cannot recall it except in case of fraud, mistake or inadvertence. *Lesmeister v. Dewey County, et al.*, 75 S.D. 360, 65 N.W.2d 136 (1954); *Bahlkow v. Preston*, 62 S.D. 36, 251 N.W. 299 (1933). While Arcon claims there was a mistake of fact in our previous decision in this case, we do not perceive it as such, and therefore find no reason to deviate from our well-established rule. Furthermore, beyond the

remittitur rule just stated, we are of the opinion the trial court was without jurisdiction to entertain Arcon's motion to reinstate the verdict via the omnibus hearing. This may well have been the reason for the trial court's denial of Arcon's motion. It is clear that the omnibus hearing was scheduled for the purpose of clarifying the damage evidence, motion to amend complaint, and other retrial-related matters. The matter of reinstatement of the original verdict had previously been disposed of under appropriate rehearing petitions. The retrial of the damage issue as directed by our remand simply does not provide a jurisdictional basis for the renewal of this reinstatement motion. It is fundamental, of course, that if the trial court was without jurisdiction to entertain the motion, the appellate court is likewise without jurisdiction to hear it. *Ward v. Viborg School Dist. No. 60–5,* 319 N.W.2d 502 (S.D.1982); *Darnall, et al. v. State, et al.,* 79 S.D. 59, 108 N.W.2d 201 (1961).

We, accordingly, affirm the trial court with respect to Arcon's reinstatement motion.

■ Arcon has, as early as August 9, 1984, motioned to amend its complaint concerning damages for increased costs of materials, for 1979 idle time, and for lost profits and overhead. This motion to so amend was again denied by the trial court at its omnibus hearing and as demonstrated by its "omnibus order" dated July 19, 1985.

We conclude that in order for the parties to conform with the directives of our previous decision, it is necessary that the trial court allow Arcon's amendment of its pleadings as requested. A reading of our discussion in this regard as found on page 415 of our decision provides ample support for Arcon's amendment. We, accordingly, reverse the trial court and direct the allowance of the amendment as embodied in Arcon's motion.

*Appeal # 15091 (Cement Plant):*

The Cement Plant appeals from the trial court's omnibus order in the following three particulars.

1. The order's denial of Cement Plant's motion to disqualify the trial judge.
2. The order's denial of Cement Plant's motion to preclude averaging.
3. The order's sua sponte reinstatement of all damages items not related to the Blue Book.

## THE ORDER'S DENIAL OF CEMENT PLANT'S MOTION TO DISQUALIFY THE TRIAL JUDGE

■ As noted previously, this case has been remanded for "retrial on the damage question in accord with the guidelines set forth in the opinion." *Arcon Const. Co., supra,* at p. 417.

Following the remand on damages, Arcon petitioned for rehearing on May 11, 1984. On May 22, 1984, the Cement Plant also petitioned for rehearing. On June 7, 1984, we entered an order denying both petitions for rehearing. On this same date, a remittitur of the case was made to the trial court. On April 1, 1985, the trial court filed its own petition for rehearing. Arcon joined in this petition on April 18, 1985. We denied the trial court's petition for rehearing, as well as that of Arcon. On May 8, 1985, Arcon motioned for relief pursuant to SDCL 15–6–60(b). We denied this motion on May 16, 1985. The omnibus order was entered by the trial judge on July 19, 1985. On September 19, 1985, we granted the petition for allowance of appeal from this intermediate order.

The Cement Plant claims the trial court should have disqualified itself on the remand from the Supreme Court on the grounds that the court's impartiality might reasonably be questioned based on the court's statements at various post-remand hearings, and on the court's own petition for rehearing as previously mentioned.

It appears from the May 2, 1985 omnibus hearing, that the trial court's primary reasons for filing its own petition for rehearing were: (1) its conviction that this court did not adequately review the record of the original trial; and (2) its belief that the original verdict will be reinstated on retrial, and is in any event a reasonable verdict.

At the May 2, 1985 omnibus hearing, the trial court also announced its intention not

to have a retrial on those items of damages not related to the idle time claim.

Cement Plant urges the trial judge should be disqualified pursuant to Canon 3C of the Code of Judicial Conduct. This canon is found at the appendix to Chapter 16–2 and in relevant part states: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned ..."

Cement Plant specifically refers to the trial court's gratuitous filing of its petition for rehearing requesting the Supreme Court reinstate the original jury verdict. Cement Plant contends that the trial court, in filing its own petition for rehearing, adopted all of the arguments and positions of Arcon and thereby destroyed its impartiality on the retrial. As noted above, Arcon did in fact join in the trial court's petition for rehearing.

A review of the trial court's statements at the various hearings, as well as its petition for rehearing, indicates the trial court's petition was based on an honest conviction and belief that this court had not adequately reviewed the original trial record. Furthermore, the trial judge's statements throughout the hearing transcript on May 2, 1985, indicate that the trial judge intended to faithfully apply the standards and guidelines of this court as laid down in its appellate decision. Further, that he had not predetermined any issues, and that when these matters come back before him on retrial, both sides will have their theories properly presented to the jury. The trial judge further indicated that he would attempt to "do a better job" with the jury instructions on retrial. The trial judge further indicated that while he has some differences of opinion with this court concerning the interpretation of the Uniform Commercial Code, (UCC), that nevertheless:

> The Supreme Court has decided that the ownership costs will be the measure and I am bound by that on the retrial.

It is further apparent from the May 2, 1985 transcript, that the trial judge believed he had dealt fairly with both parties at the initial trial and that he had acted professionally throughout the entire trial and pledged to continue to do so at the retrial. Absent a specific statute requiring it, the removal of a trial judge on retrial after a remand from this court should be exercised sparingly, and only where the remedy by an appeal would be wholly inadequate.

In this case, the trial judge has expressed opinion based on the evidence he heard at the first trial. However, this alone should not disqualify him from presiding at the retrial required by our remand on the damage issue. It must be remembered that the jury, as the ultimate fact finder, will make the decisive judgment as to the credibility of the witnesses and the weight of the evidence. Where the trial judge is sitting as the fact finder, the circumstances here would no doubt require a recusal of the trial judge. We, however, are not confronted with this dilemma in these proceedings.

This was a long and complicated trial. For a new judge to now be called in to hear the retrial on damages, and for him to achieve the necessary familiarity with the case would require wasteful delay and duplicated effort. Considering the trial court's pledge to follow the law and the dictates of our decision on remand, as well as additional directives set out in this opinion, we conclude Cement Plant will be fairly treated at the retrial, and therefore the request for removal of the trial judge should be and is denied.

## THE ORDER'S DENIAL OF CEMENT PLANT'S MOTION TO PRECLUDE AVERAGING

We conclude that our decision previously entered effectively disposes of Cement Plant's claim of error here. We stated in our decision as follows:

> Blue Book figures may be admitted by the trial court in its discretion if the court determines that this evidence would aid the jury on the issue of damages under the facts of this case.

*Arcon Const. Co., supra,* at p. 414.

If Arcon presents a satisfactory foundational showing that its actual owner-

ship cost records are inadequate, then, under our decision, averaging and the Blue Book rental rates may be used as secondary evidence of such ownership costs as an aid to the jury in its damage determination.

■ We point out that damages on the remand must be premised on the allocation of the cost of the equipment for the period involved, and we so construe our previous decision in this regard.

We, accordingly, affirm the trial court's denial of Cement Plant's motion to preclude averaging.

### THE ORDER'S SUA SPONTE REINSTATEMENT OF ALL DAMAGES ITEMS NOT RELATED TO THE BLUE BOOK

■ Our initial decision clearly requires a "retrial on the damage question." We interpret this to mean a retrial of all of the elements of damages claimed by Arcon, including those provided for in the amended complaint. We, accordingly, reverse the trial court's omnibus order in this regard.

Therefore, pursuant to Appeal # 15092, we affirm the trial court in regard to Arcon's reinstatement motion, and we reverse with directions to allow amendment of the complaint as embodied in Arcon's motion. Pursuant to Appeal # 15091, we deny Cement Plant's request for removal of the trial judge; we affirm the trial court's denial of Cement Plant's motion to preclude averaging; and we reverse the omnibus order's reinstatement of all damages items not related to the Blue Book, and hold that upon retrial, all the elements of damages claimed by Arcon including those provided for in the amended complaint, may be properly considered.

FOSHEIM, C.J., and MORGAN and HENDERSON, JJ., concur.

WUEST, Justice, concurs specially.

WUEST, Justice (concurring specially).

I concur, except with the rule of damages pronounced in *Arcon I* and this opinion relating to idled machinery. The damages, if any, are the increased costs over and above the allocation for machinery costs bid in the contract. Simply stated, by way of explanation, assume an hourly rental rate or ownership cost of $15.00 per hour on a particular piece of machinery as bid or figured in the contract, and assume the breach of contract delays the project for two years and the rental rate or ownership cost increases to $20.00 per hour, then Arcon is entitled to $5.00 per hour for the hours allocated to the project for that piece of equipment. It should not be any great accounting feat to re-compute those rental rates or ownership costs. The increased costs may be shown by the current Blue Book rental rates at the time the work was done, or by expert testimony.

In addition, Arcon may recover additional damages resulting from the idled equipment. For example, the equipment remains on the job for two years because of the breach to complete a function of the construction process. Arcon recovers its damages in the preceding example for time allocated to the project, but in addition, they are entitled to the reasonable rental value of the machinery for the time it remains on the project site waiting to complete the project. However, ordinary depreciation and the cost of repairs must be deducted from the reasonable rental value, as those would be a cost to Arcon if the machine was rented or being used on a project. Also, Arcon had an obligation to mitigate damages by using the machine on other jobs or renting it to other contractors, if practicable. Nor would they be entitled to damages when the machine is idled by climatic facts. Again, the Blue Book rental rates may be used as a guide if the proper foundation is laid, or expert testimony may be used of people knowledgeable of rental rates in the industry.

In *Arcon I,* the court indicated a recovery may be had for security, maintenance, etc. I agree.