ARCON CONSTRUCTION CO.,
INC., Plaintiff,

and

Hardrives, Inc., Plaintiff and Appellee,

v.

SOUTH DAKOTA CEMENT PLANT
and Cement Plant Commission,
Defendants and Appellants.

No. 15514.

Supreme Court of South Dakota.

Argued May 21, 1987.

Decided Sept. 23, 1987.

Gary F. Colwill of Schmidt, Schroyer, Colwill, & Barnett, P.C., Pierre, for plaintiff and appellee.

Wayne F. Gilbert of Banks, Johnson, Monserud, Johnson, Colbath & Huffman, P.C., Rapid City, for defendants and appellants.

SABERS, Justice (on reassignment).

The South Dakota Cement Plant (Cement Plant) appeals from a judgment for Hardrives, Inc. (Hardrives), a highway construction subcontractor for the general contractor, Arcon Construction Co., Inc. (Arcon). We affirm.

## FACTS

Arcon commenced a breach of contract action against Cement Plant on April 17, 1980. This action was based upon Cement Plant's failure to make timely delivery of certain quantities of cement Arcon had required on two highway paving projects scheduled for the 1978 construction season. Without the supply of cement, Arcon was unable to perform work on the projects until the 1979 and 1980 construction seasons.

Arcon's subcontractor, Hardrives, like Arcon, suffered increased costs due to the delays. Although Hardrives did not use cement for its bituminous work, Hardrives'

work was delayed because it could not build the asphalt shoulder until Arcon finished paving the roadway.

During the period construction was delayed, prices for materials used by Hardrives increased substantially. In a letter to Arcon dated May 5, 1980, Hardrives requested that its subcontract be amended to cover the increased costs it expected to incur due to the delays. Arcon responded by letter dated May 23, 1980, in which Arcon offered to pay Hardrives an additional $12,500 as a change order to the subcontract. In addition, Arcon requested that Hardrives furnish evidence of the projected increased cost of materials so that Arcon could make a claim for those costs. The change order further provided:

> If the Subcontractor chooses to participate in any claim the Contractor makes against the South Dakota Department of Transportation or the South Dakota Cement Plant, and if the Contractor does recover, $12,500 will be retained by the Contractor in consideration of this change order.

By virtue of this change order, Hardrives assigned its claim against the Cement Plant (damages exceeding $12,500) to Arcon, and Arcon agreed to bring that claim on behalf of Hardrives. On October 4, 1982, Arcon moved to amend its complaint to include the damages of its subcontractor, Hardrives. The trial court denied the motion. The case proceeded to trial and the jury found in favor of Arcon. On appeal, this court affirmed the liability determination but reversed and remanded for retrial on the damage issues. *Arcon Constr. Co. v. South Dakota Cement Plant*, 349 N.W.2d 407 (S.D.1984) (Arcon I).

Thereafter, on August 9, 1984, Arcon moved the assigned claim be included by allowing Hardrives as a party plaintiff. This motion was part of Arcon's motion to further amend the complaint, which included claims for certain other damages caused to Arcon. Prior to retrial there were ap-

peals from the interlocutory order of the trial court. This court again remanded for a new trial on damages and also directed Arcon be allowed to amend its complaint with additional claim items. *Arcon Constr. Co., Inc. v. South Dakota Cement Plant*, 382 N.W.2d 668 (S.D.1986) (Arcon II).[1]

Our initial decision clearly requires a "retrial on the damage question." We interpret this to mean a retrial of all of the elements of damages claimed by Arcon, including those provided for in the amended complaint.

[W]e reverse with directions to allow amendment of the complaint as embodied in Arcon's motion.... upon retrial, all the elements of damages claimed by Arcon including those provided for in the amended complaint, may be properly considered.

*Arcon II*, 382 N.W.2d at 672.

Thereafter, on March 14, 1986, Arcon filed another motion to amend the complaint which among other things again sought to add Hardrives as a party plaintiff. The trial court, construing our decision in *Arcon II*, stated:

> [T]he Supreme Court ... has made it clear ... that Hardrives is included, and they have essentially directed liability in my opinion ... they have clearly allowed Hardrives to become a party through Arcon ... the Supreme Court has directed liability in favor of Hardrives and against the Cement Plant.

(Pretrial Proceedings of March 26, 1986 at pp. 15 and 17).

The trial court granted Arcon's motion as to Hardrives on April 8, 1986. In addition, the trial court in essence directed liability in favor of Hardrives without consideration of the statute of limitations and privity defenses asserted by Cement Plant. Cement Plant argued that Hardrives had no valid cause of action to assign to Arcon, even assuming some assignment had been made.

---

1. *Arcon Constr. v. South Dakota Dept. of Transp.*, 365 N.W.2d 866 (S.D.1985), dealt with separate projects. *Arcon Constr. Co. v. South Dakota Cement Plant*, 405 N.W.2d 45 (S.D.1987) (Arcon III), deals with this subject matter and prejudgment interest. The present appeal is Arcon IV.

At the conclusion of the 1986 retrial on damages the jury was instructed that the question of Cement Plant's liability to Hardrives had already been determined and all that remained was to fix damages. The jury awarded Hardrives $20,542.05, which was the $33,042.05 increased cost of burner fuel and asphalt less the $12,500 Hardrives had already received from Arcon. This appeal (Arcon IV) follows the trial court's denial of Cement Plant's motion for judgment notwithstanding the verdict pertaining to the $20,542.05 award to Hardrives.

### Cement Plant's Claims

Cement Plant claims that it is immune from a delay damages suit brought by one who is not a buyer and not a party to any contract under the U.C.C., and that the claim was barred by the applicable U.C.C. statute of limitations.

### Decision

■ In *Arcon I*, we held that sovereign immunity does not bar a breach of contract action under the U.C.C. against Cement Plant. *Arcon II* indicated that the trial court should allow Arcon to amend its pleadings to include other additional damages suffered by Arcon. The trial court ruled that *Arcon II* entitled Arcon to add Hardrives as a party. The trial court disposed of Cement Plant's privity and statute of limitation arguments based on its understanding of *Arcon II*, which was that Hardrives had a claim in its own name, which claim related back to the very beginning of the lawsuit. Although it is not clear that *Arcon II* intended to have Hardrives added as a party, it is clear that it intended a retrial "of all of the elements of damages claimed by Arcon, including those provided for in the amended complaint." *Arcon II*, *supra* at 672. This was a retrial on damages only because liability had been upheld by the Supreme Court in *Arcon II*. This became the law of the case [2] and eliminates the immunity, privity, and statute of limitation defenses urged by Cement Plant.

Cement Plant also argues that Hardrives' delay damages, except for the $12,500 paid to Hardrives by Arcon, were not damages that Arcon could claim it suffered.

■ Cement Plant's actions wrongfully delayed Arcon, which caused Hardrives $33,042.05 damages from Arcon, not just $12,500. Since Arcon must indemnify Hardrives, Arcon *can claim* all of these damages ($33,042.05) against Cement Plant, not just the $12,500 which was already included.

The trial court simply allowed Hardrives to prove its claim against Arcon, directly against the wrongdoer, the Cement Plant. This was simply another method of presenting the balance of Arcon's claim against the Cement Plant. Essentially, this was more like a bifurcated trial on this issue of these damages. No harm was done. Cement Plant received a fair trial. Now, it is asking to be relieved of the result of that fair trial despite the fact that no substantial rights of the parties were *affected*. SDCL 15-6-61. We refuse that request; to do otherwise would produce gross injustice. It would take $20,542.05 from Hardrives and give it to the Cement Plant. This would be an undeserved "windfall" to the Cement Plant at the expense of the damaged party.

Judgment affirmed.

MORGAN and MILLER, JJ., concur.

WUEST, C.J., and HERTZ, Circuit Judge, dissent.

HERTZ, Circuit Judge, sitting for HENDERSON, J., disqualified.

WUEST, Chief Justice (dissenting).

The trial court misconstrued our holding in *Arcon II*. The majority opinion furthers that error.

The *Arcon II* decision authored by Judge Hertz reversed the trial court's interlocu-

**2.** *See Dakota Block Co. v. Western Cas. & Sur. Co.*, 82 S.D. 546, 150 N.W.2d 729 (1967); *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149 (Iowa 1984), *citing United States v. Unger*, 700 F.2d 445, 450 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983); *Cicelski v. Sears, Roebuck & Co.*, 132 Mich.App. 298, 348 N.W.2d 685 (1984).

tory order with directions to "allow amendment of the complaint as embodied in Arcon's motion." Upon retrial, "all the elements of damages claimed by Arcon including those in the amended complaint" could be properly considered. *Arcon II*, 382 N.W.2d at 672.

Our holding in *Arcon II* did not mandate joinder of Hardrives' claim for delay damages. It also did not, as stated by the trial court, essentially direct liability for Hardrives' damages against the Cement Plant. *Arcon II* merely indicated that, on remand, for purposes of *damages retrial*, the trial court should allow Arcon to amend its pleadings to include other additional damages *suffered by Arcon*. Except for the $12,500 Arcon agreed to pay Hardrives as increased mobilization, Hardrives delay damages were *not damages suffered by Arcon*.

What the trial court did was first recognize that Arcon's motion to amend the amended complaint included a request that Hardrives be allowed to join as a party plaintiff. Since Arcon's amended complaint outlined Hardrives' damages and since these damages were thus being "claimed by Arcon on behalf of Hardrives," the court reasoned that we were mandating joinder of Hardrives' claim by virtue of our language in *Arcon II*. The trial court refused to hear Cement Plant's statute of limitations defense and proceeded to admit Hardrives as a party to the damages retrial.

Cement Plant's liability to Arcon had already been litigated and had been affirmed in *Arcon I*. What remained was only a damages retrial on reasonable damages due Arcon. Confronted with this fact, the trial court reasoned since we had *apparently* mandated joinder of Hardrives' claim in *Arcon II*, we had therefore "essentially" directed liability for Hardrives against the Cement Plant.

The issue of Cement Plant's liability to Hardrives was never litigated. Relying solely on its reading of *Arcon II*, at the conclusion of the 1986 retrial on damages the trial court instructed the jury that the question of Cement Plant's liability to Hardrives had already been determined and all that remained was to fix damages. The law of the case as to Cement Plant's liability to Arcon has nothing to do with Hardrives.

In its appellate brief, Arcon struggles to explain a procedural basis for the gift when the trial court allowed Hardrives to join as a party plaintiff. While "[H]ardrives may not be an intervenor in the strict sense of the word in this particular action[.]" (p. 12). "Hardrives' position in this lawsuit *may well be compared* to that of an intervenor seeking permissively to enter an existing lawsuit because of joint questions of fact and law." (p. 9). On page 11, Arcon cites *Sweetman Construction Co., Inc. v. State*, 293 N.W.2d 457 (S.D.1980) and states: "[W]hile the facts may not be analogous directly to the situation before the Court in this case, it is certainly an expression of this Court's rationale to allow the *real parties in interest* to litigate a cause of action."

It is clear there was simply no procedural basis for allowing Hardrives in as a direct party to the damages retrial. The trial court relied solely on a flawed reading of *Arcon II* and did not consider Cement Plant's statute of limitations defense against Hardrives joinder as a party plaintiff or determine a procedural basis on which Hardrives could join.

Similarly, this court's opinion in *Arcon II* did not mandate a directed verdict for Hardrives. The trial court's determination of Cement Plant's liability to Hardrives resulted solely from a misconstrued application of the holding in *Arcon II*, and in fact no basis exists for holding Cement Plant directly liable to Hardrives.

Arcon sued Cement Plant for damages resulting from the breach of their sales contract. Hardrives, however, has never established a theory of recovery on which it could maintain a direct action against Cement Plant. Clearly, breach of contract is not a cause of action available to Hardrives. There is no privity of contract between Cement Plant and Hardrives.

Ordinarily, the obligations arising out of a contract are due only to those with

whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except under a real party in interest statute or, under certain circumstances, by a third-party beneficiary. As a general rule, whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto. It has been said that he alone to whom a promise is made or in whom its legal interest is vested can enforce performance or complain of its breach. 17 Am.Jur.2d, Contracts, § 297 (1964). Even the trial court indicated it believed Cement Plant had a valid privity defense, but the Court indicated it would not be able to reach the issue since *Arcon II* seemingly called for a directed verdict in favor of Hardrives.

On appeal, Hardrives addresses the merits of privity defense raised by Cement Plant. Hardrives argues that *Sweetman Construction, supra,* is authority for the proposition that the privity requirement should not apply in this case. In *Sweetman,* we held SDCL 31–2–34 specifically gives a subcontractor standing to sue the South Dakota Department of Transportation for work performed pursuant to a construction subcontract expressly approved by the State. *Sweetman,* however, did not involve a contract for the sale of goods or a lawsuit by a stranger to that contract.

Not only is there no basis for Hardrives proceeding directly against Cement Plant (which was allowed to occur here), there is also no basis for Arcon recovering Hardrives' damages. Arcon cannot recover Hardrives' damages for itself because except for the $12,500 payment, *Hardrives' damages were not suffered by Arcon.*

First of all, Hardrives never proceeded against or received any judgment from Arcon. Nor did Arcon ever agree to *indemnify* Hardrives for all of the subcontractor's increased costs. Trial Exhibit 132 was merely a change order from the original subcontract that promised an additional $12,500 incentive for Hardrives to tender performance under the subcontract. Neither this or any other document in the record professes to indemnify Hardrives for all of the $33,042.55 in increased costs of performance that Hardrives would incur by performing under the subcontract, and Arcon has never asserted that there was an oral agreement concerning indemnification by Arcon. Finally, there is no proof in the record of an assignment of a cause of action by Hardrives to Arcon. Arcon tacitly admits this fact on page 7 of its brief when it states: "The agreement (Trial Exhibit 132) *might even be compared to* an assignment of a cause of action because it has many of the attributes of an assignment." Even if an assignment did occur, Cement Plant's privity defense (which was never litigated) preempts a valid cause of action by Hardrives whether made directly or by Arcon on assignment from Hardrives.

The trial court allowed the Hardrives' claim at Arcon's damages retrial by making Hardrives a party plaintiff and directing a verdict for Hardrives. The majority affirms the trial court's ruling yet offers no explanation as to how it can allow the trial court to make Hardrives a direct party to the damages retrial and give a directed verdict based merely on our decision in *Arcon II.*

The majority rests its opinion on the position that it will not allow form to rule over substance. The majority first declares that Arcon agreed to indemnify Hardrives for increased costs above $12,500. This court then reasons since Arcon could therefore seek these damages on its own behalf, there was no harm in the trial court allowing the Hardrives claim by admitting Hardrives as a party plaintiff.

There was no finding by the trial court that Arcon agreed to indemnify Hardrives for all damage—as a matter of fact, the evidence clearly shows otherwise. Yet, the majority pins its decision on that statement. The majority concludes by stating Cement Plant received a "fair trial" when in reality there was never any trial on the

merits between Cement Plant and Hardrives.

The court affirms in this case despite the remarkable events leading to this appeal and maintains that to do otherwise would result in an underserved "windfall" to the Cement Plant. Simply pointing out that Cement Plant's breach of its supply contract eventually affected a stranger to the contract, however, does not establish the stranger's right to damages as a matter of law. Hardrives was injected into the retrial on damages from a decision based not on a determination of the facts and the law, but from a decision based solely on an erroneous interpretation of our decision in *Arcon II.* I would reverse.

I am hereby authorized to state that HERTZ, Circuit Court Judge, joins in this dissent.