**DEUTZ & CROW CO., INC., a Minnesota Corporation, Plaintiff and Appellant,**

v.

**SOUTH DAKOTA STATE CEMENT PLANT COMMISSION, a State Agency with its principal place of business in Pennington County, South Dakota, Defendant and Appellee.**

Nos. 17035, 17047.

Supreme Court of South Dakota.

Argued Oct. 22, 1990.

Decided Feb. 13, 1991.

Rehearing Denied March 6, 1991.

Ronald G. Schmidt, Schmidt, Schroyer, Colwill & Barnett, P.C., Pierre, for plaintiff and appellant.

James W. Olson, Wilson, Olson, Nash, Becker & Smoot, P.C., Rapid City, Warren May, May, Adam, Gerdes & Thompson, Pierre, for defendant and appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES/HOLDING

This is a case instituted against the South Dakota State Cement Plant. We affirm on the basis that the action is barred by the Statute of Limitations.

On May 16, 1988, Deutz & Crow Co., Inc. (Deutz & Crow) commenced this action against the South Dakota State Cement Plant Commission (Cement Plant). In their Complaint, Deutz & Crow alleged claims for breach of contract, tortious interference, bad faith, fraud and deceit, negligent misrepresentation, negligence, punitive damages, cost of money and collateral estoppel. The Cement Plant admitted that they breached their contract with Deutz & Crow, but denied the remainder of the allegations.

On July 17, 1988, Cement Plant answered and subsequently filed a Motion to Dismiss all claims for punitive damages. This Motion was denied. Thereafter, Cement Plant sought an Interlocutory Appeal of this Order which was also denied.

On May 16, 1989, the trial court allowed Deutz & Crow to file an Amended Complaint. An Amended Answer was filed by Cement Plant on July 13, 1989.

On July 20, 1989, Cement Plant filed its first Motion for Summary Judgment on Statute of Limitations grounds. It also sought Partial Summary Judgment to bar Deutz & Crow from recovering damages on losses at its Estherville and Swea City, Iowa plants on contract theory, specifically asserting that Cement Plant had not sold cement to Deutz & Crow for delivery to either of the above-mentioned plants during the years of 1976, 1977 and 1978. Deutz & Crow filed a Motion for Partial Summary Judgment on bad faith and deceit claims and also filed a Motion to Submit Punitive Damages to the jury.

On August 30, 1989, an Order was entered granting Partial Summary Judgment as to Cement Plant's claim that Deutz & Crow should be barred from recovering damages on losses at its Estherville and Swea City, Iowa plants. The trial court also denied Deutz & Crow Summary Judgment upon its claims of fraud and deceit and entered an Order permitting Deutz & Crow to proceed with discovery on punitive damages to be submitted to a jury, and denied Cement Plant's Motion of Summary Judgment upon Statute of Limitations issues.

On October 4, 1989, Cement Plant renewed its Motion for Summary Judgment on the Statute of Limitations contained in SDCL 57A–2–725(2).[1] Cement Plant also filed a Motion for Summary Judgment upon the grounds of Res Judicata and the Doctrine of Judicial Estoppel. On January 26, 1990, the trial court issued its Memorandum decision granting Summary Judgment to Cement Plant on all three grounds. On February 5, 1990, the trial court filed a slightly revised form of the Memorandum Decision issued on January 26, 1990. An Order was entered granting the Cement Plant Summary Judgment.

On February 8, 1990, an Order was entered denying both Deutz & Crow's Motion to Reconsider and Renewed Supplemental Motion to Reconsider. This postured the case for the present appeal.

On appeal, Deutz & Crow raise eleven issues. They are as follows:

I. Deutz & Crow "disclosed" potential contingent claims in the bankruptcy

---

1. **57A–2–725. Statute of limitations in contracts for sale.**
 (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.
 (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

proceedings as a matter of law, or alternatively, such "disclosure" is a controverted issue of material fact for the jury.

II. Whether Deutz & Crow "knew or should have known" of the Cement Plant's fraudulent concealment of the excuse of the breach of contract and other tort claims under the totality of circumstances surrounding the January 20, 1983 interview for Statute of Limitations purposes makes summary judgment inappropriate since "state of mind" and equitable issues are not suited to summary judgment.

III. Assuming arguendo that a Statute of Limitations may apply under the facts, summary judgment is nevertheless still inappropriate in light of the issue that Cement Plant should be estopped from asserting any Statute of Limitations defense.

IV. The bankruptcy court did not have jurisdiction of Deutz & Crow's breach of contract and tort claims and could not have adjudicated any cause of action or issue now before this Court; res judicata and judicial estoppel are inapplicable.

V. There is no merit to the Cement Plant's standing or real party in interest contentions.

VI. The Cement Plant must be held to have waived, or be estopped from asserting its defenses of res judicata, judicial estoppel, and Statute of Limitations as a matter of law; or, alternatively, these issues present material fact issues for the jury.

VII. Res judicata and judicial estoppel should not be available to perpetuate fraud in light of the trial court's finding that the Cement Plant deceived Deutz & Crow by clear and convincing evidence, such fraud issues never have been previously tried in any forum; thus, to allow the equitable remedies of res judicata and judicial estoppel will allow the Cement Plant to benefit by its own wrongdoing and prevent the trial of such fraud issues on their merits.

VIII. The Cement Plant's having known of Deutz & Crow's potential contingent claims since January 20, 1983, has waived or is equitably estopped from asserting its res judicata and judicial estoppel defenses by reason of having failed to affirmatively and timely plead such defenses.

IX. Assuming arguendo that the Statutes of Limitation apply: Nevertheless, the six-year Statute of Limitations for tort claims, as opposed to the four-year UCC breach of contract Statute of Limitations, applies to Deutz & Crow's tort claims which were timely filed within six years of January 20, 1983.

X. The trial court erred in denying Deutz & Crow's partial summary judgment motion on bad faith, fraud and deceit since fraud and deceit need only be proven by a preponderance of the evidence, and the trial court found the Cement Plant guilty of fraud and deceit by clear and convincing evidence.

XI. The trial court erred in granting the Cement Plant's motion to deny damages to Deutz & Crow incident to its Swea City and Estherville, Iowa plants.

By Notice of Review, the Cement Plant argues that as an agency of the State of South Dakota, they should not be subject to punitive damages.

Due to our decision that Deutz & Crow is barred by the Statute of Limitations, SDCL 57A–2–725(2), we decline to address the remaining issues.

### FACTS

Deutz & Crow is a Minnesota Corporation which operated a Ready–Mix business since 1946. Franklin J. Crow (Crow) is the President of Deutz & Crow. The Cement Plant is an agency of the State of South Dakota authorized by law to engage in the commercial manufacture and sale of cement.

Prior to 1978, Deutz & Crow developed a business relationship with the Cement Plant, cement would be sold to Deutz & Crow annually for use in its plants located in the State of Minnesota. Deutz & Crow agreed to purchase substantially all of its cement requirements from the Cement Plant.

Beginning in approximately May or June 1978, the Cement Plant began to breach its requirements contract with Deutz & Crow. Deutz & Crow was forced to locate a source of cement in Canada. This situation caused serious financial problems to Deutz & Crow.

In 1982, Deutz & Crow's creditors, including the Cement Plant, placed Deutz & Crow into involuntary bankruptcy. Deutz & Crow then converted the bankruptcy into a Chapter 11 Reorganization. On October 25, 1982, Deutz & Crow filed a Statement of Financial Affairs for a Debtor Engaged in Business, which requires a debtor to list contingent and unliquidated claims of every nature, including counterclaims of the debtor. Deutz & Crow did not list any claims against the Cement Plant. In July of 1983, Deutz & Crow filed its Disclosure Statement and Plan of Reorganization. On October 27, 1983, the bankruptcy court entered an Order Confirming the Plan. On April 23, 1984, the Order Confirming Debtor's Plan of Reorganization was vacated. Thereupon, the matter of confirmation was continued.

On January 9, 1985, Deutz & Crow filed a Modified Plan of Reorganization which was approved by the court on March 6, 1985. A Notice of Confirmation was mailed requiring any objections to claims to be filed and served within 30 days of March 18, 1985. Subsequently, an Order was entered on April 5, 1985, allowing Deutz & Crow to amend their Schedule of Creditors. The Cement Plant was not listed in the schedule. On September 8, 1987, an Order and Final Decree closing the Chapter 11 case was entered.

The present litigation involves a breach of contract and concealment of that breach by the Cement Plant. At a Cement Plant meeting on June 1, 1978, the Cement Plant President Scanlon (Scanlon) reported to the Cement Commission that there was a regional and national cement shortage and that the Cement Plant was having difficulty filling orders. On June 28, 1978, Michael E. Holeton (Holeton), Pricing Manager for the Cement Plant, called Roger Loyson (Loyson), Vice–President and General Manager of Deutz & Crow, to inform him that there would be no out-of-state cement shipments.

On July 11, 1978, the Cement Commission ordered a restriction on all out-of-state cement shipments. On July 20, 1978, Loyson wrote Scanlon stating he and his legal counsel felt that the July 11, 1978, Order issued by the Cement Commission effectively would shut Deutz & Crow down. The communication also stated that the Cement Plant had breached their contractual relationship; therein, Deutz & Crow served notice that the result would be an expensive and costly litigation in federal court in Minnesota.

During this time, the Cement Plant was required to allocate its cement among its customers in compliance with an Order issued by Federal District Judge Bogue on July 21, 1978; it was subsequently ordered by then Judge Robert Miller on August 28, 1978, to give priority to its in-state customers. However, the Cement Plant continued to provide cement to the Eisenhower Project in Denver, Colorado.

Because of the nature of this case, it is important to decide at what point Deutz & Crow knew about the Cement Plant's conduct and when that knowledge was obtained. These facts determine when the Statute of Limitations would begin to run, and also determine what Deutz & Crow was required to disclose to the bankruptcy court in its sworn Schedules of Assets and Liabilities.

The actions and conduct of the Cement Plant were explored and presented in two prior cases, *Arcon Const. Co. v. South Dakota Cement Plant Comm.*, 349 N.W.2d 407 (S.D.1984) (*Arcon I*), *Arcon II*, 382 N.W.2d 668 (S.D.1986), and *L.R. Foy Const. Co. v. South Dakota Cement Plant Comm.*, 399 N.W.2d 340 (S.D.1987). A sizeable *Arcon* verdict was rendered on January 18, 1983. Although *Arcon* was a contract case, the facts relied on by Deutz & Crow in this case, both as to fraud and contract, were developed in *Arcon I*.

According to the trial court, Crow, twice under oath, testified that he became aware of the *Arcon* case after a visit in Minne-

apolis in 1986 with one Arnie Laingen (Laingen). Crow testified that Laingen told him that Attorney Ronald Schmidt (Schmidt) had handled an earlier lawsuit and that Crow would contact Schmidt for more information. According to Crow's deposition, the first time he knew anything about *Arcon* or that Schmidt had handled the *Arcon* case was in 1986, after this visit with Laingen. In his testimony, Crow repeatedly denied any knowledge of the *Arcon* case or the result reached in *Arcon*. Based upon Crow's testimony under oath that he had no knowledge of the *Arcon* verdict until 1986, the trial court denied the Cement Plant's Motion to Dismiss on the Basis of the Statute of Limitations and Equitable Estoppel. At that time, the court, construing the facts most favorable to the nonmoving party, Deutz & Crow, denied these Motions under Crow's testimony, i.e., that he had no knowledge of the *Arcon* case until 1986.

However, some time after that ruling, the Cement Plant presented to the trial court some newly discovered evidence, including a tape recorded conversation between Anthony Owens, a DCI agent, Mr. Vollmer, a Cement Plant employee, Crow, and Roger Loyson. This conversation was tape recorded without the knowledge of Crow. His conversation, which took place two days after the *Arcon* verdict on January 20, 1983, is in complete opposition to previous sworn testimony by Crow in his depositions.[2] The deposition testimony denied any knowledge of the *Arcon* verdict or talking to Schmidt until 1986. In addition, he acknowledged that Reeves, Inc., from Wyoming, one of the other companies su-

ing the Cement Plant, would bring a suit in 1983 based on the outcome of *Arcon*, and that Crow could join if he wished.

After considering the entire record, the trial court granted Summary Judgment in favor of the Cement Plant.

## DECISION

I. *The trial court properly granted summary judgment under the applicable statute of limitations, SDCL 57A-2-725(2).*

Initially, it should be noted that our task on appeal [when dealing with summary judgment] is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Pickering v. Pickering*, 434 N.W.2d 758 (S.D.1989). In reviewing a grant or a denial of summary judgment, we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987). Evidence must be viewed most favorably to the nonmoving party and reasonable doubts are to be resolved against the moving party. *Klatt v. Continental Ins. Co.*, 409 N.W.2d 366 (S.D.1987).

Cement Plant first moved for summary judgment on July 20, 1989 based upon the running of the applicable Statute of Limitations. This was denied. However, after

2. Crow: What do you think of the Arcon settlement?

Vollmer: I guess all I can is they will definitely appeal it. I am sure that they have started on that already. It was kind of a surprise, I guess, we were expecting it.

Crow: *That opened the door for a lot of stuff. You know Schmidt from Pierre that I talked to, an attorney that worked for Arcon, you know. We were hurt as much as anybody.* All of our plants were cut off overnight practically and we were just left high and dry after thirty years. I had to go to Toronto to buy $3 million worth of cement and ship it down and that was the start of a lot of our troubles.

Owens: Toronto, that's a haul.

Crow: You better believe that's a long haul.

Owens: Big freight bill.

Crow: And we're still involved with the railroads in a law suit over that.

Loyson: But that was really the beginning of the down fall of the company.

Crow: *Of the Company and so he wants to know, you know, maybe I got some action coming out there and I said well, if I get this settled, I'll be out but not right now. Like I say now Reeves is going to jump right in on it in Wyoming.*

Loyson: He'll be on that like a duck on a....

Crow: *Because he was trying to get us to go in with him at the time....*

the discovery of a tape recorded interview of Deutz & Crow's officers which indicated their knowledge of a cause of action earlier than admitted, the trial court granted summary judgment in favor of the Cement Plant on the grounds the applicable Statute of Limitations had run.

In its February 5, 1990, Memorandum Decision, the trial court stated:

> In the summer of 1978, Deutz & Crow, by letter, threatened to sue Cement Plant in federal district court in Minnesota if a policy of historical allocation was not adopted. Also, some time in 1978, both Crow & Roger Loyson, Deutz & Crow's vice-president, knew that cement was going out-of-state to Denver. Arguably, Plaintiff, in 1978, had sufficient personal knowledge to know that an actionable breach of contract existed, although this court does not make that finding. However, when the January 20, 1983 [taped] conversation is coupled with this previous knowledge, clearly then the plaintiff knew or should have known it had a cause of action in January of 1983.[3]

The trial court found that the Statute of Limitations began running, for purposes of this action, in January of 1983, determining that this action was not brought by Deutz & Crow until May 16, 1988, nearly 5½ years later. They also determined that this breach of contract cause of action is clearly barred by application of SDCL 57A–2–725. The trial court went on to say that the only issue is whether the four year UCC statute (SDCL 57A–2–725)[4] or the six year fraud statute (SDCL 15–2–13) applies to the tort claims.

Deutz & Crow cite *Foy* as supporting authority for their assertion that the six year tort Statute of Limitations apply to Deutz & Crow's tort claims:

> Lastly, the tort claims are subject to non-UCC Statute of Limitations provi-

sions which would not likely have expired in this instance...

This excerpt can be found in a special writing to *Foy*. In the special writing, the *Foy* court was urged to address the independent tort claims raised by the appellant. The majority declined to do so. This writing was merely pointing out that there was ample authority upon which the appellants could have asserted independent tort claims based upon the facts of *Foy*:

> Conduct that is merely a breach of contract is not a tort. The contract, however, *may establish a relationship demanding the exercise of proper care and acts and omissions in performance may give rise to a tort liability. The rule is thus stated in Shearman & Redfield, Law of Negligence (6th Ed.) § 116, as follows:* "Negligence which consists merely in the breach of a contract will not afford ground for an action by any one, except a party to the contract, or a person for whose benefit the contract was avowedly made. * * * But where, in omitting to perform a contract, in whole or in part, *one also omits to use ordinary care to avoid injury to third persons, who, as he could with a slight degree of care foresee, would be exposed to risk by his negligence, he should be held liable to such persons for injuries which are the proximate result of such omission.*" (Citation omitted; emphasis added.)

However, in the present case, Deutz & Crow's claims sounding in tort do not state independent claims for Statute of Limitations purposes. We cite *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2nd Cir.1979) as a leading case for determining which Statute of Limitations applies in situations like the present one. The *Honeywell* court determined that the key issue, for determining which Statute of Limitation applies, is whether the tort or

---

**3.** We refer to this decision to reflect the rationale of the trial court only. The Summary Judgment is controlling.

**4.** In *Arcon I,* it was said at 410: "First, all transactions in goods clearly fall within the provisions of the UCC-sales. SDCL 57A–2–102.

The contract which forms the basis for the lawsuit involved the sale of cement. Cement is 'goods' under UCC-sales. SDCL 57A–2–105(1). Consequently, the type of transaction engaged between Arcon and the Cement Plant is governed by the UCC."

fraud occurred before or after the contractual relationship existed:

> If the fraud induced a party to enter into the contract in the first place, clearly that tort would be "extraneous to the contract" and one should apply the six-year statute. Id. at 747. However, when the fraud occurs after the contract was in place, the analysis differs.

The *Honeywell* court wrote that when the alleged fraud refers "to alleged misrepresentations and concealments made after the parties had entered into a contractual relationship with each other ... [such] allegations do not state separate claims for the purposes of the Statute of Limitations."

*Honeywell* relies upon *Brick v. Cohn–Hall–Marx Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937) for its general principles. The claim in *Brick* was that *after* the parties had entered into a contract regarding royalties for use of a certain type of package, the defendant "kept false books, rendered false statements and made false statements for which it did not account," thereby avoiding payment of royalties due under the contract.

The *Honeywell* court stated that this clearly was a patent effort to disguise the breach of contract claim as one for fraud, in order to take advantage of a longer period of limitations in respect to fraud claims. The Court of Appeals in *Brick*, holding that the claim was time barred for failure to sue within the contract period of limitations, pointed out that:

> "The falsity of these statements and the fraud of the defendant according to the allegations amounted to a breach of the contract and was no more or less a breach of the contract than if the defendant had deliberately refused to pay or had neglected to pay." 276 N.Y. at 264, 11 N.E.2d at 904.

*Food Town v. Sigma Marketing Systems, Inc. and ARA Services*, 518 F.Supp. 485, 489 (D.N.J.1980) supports this reasoning by stating:

> Counts three and four of plaintiff's complaint are based on fraud and tortious misrepresentation. Plaintiff contends that these actions must be considered separate and apart from the breach of contract claims and therefore the six year limitation period contained in the catch-all provisions of N.J.S.A. 2A–14–1 is applicable to these counts. While it is possible that a breach of contract also gives rise to an actionable tort, I find that plaintiff's allegations in these counts are an attempt to dress up a contract claim in a fraud suit of clothes, and consequently these counts must be dismissed inasmuch as they seek to establish a separate tort cause of action.

Continuing at 490, the court says:

> Fraud contemplated by plaintiff here does not seem to be extraneous to the contract, but rather a "fraudulent nonperformance of the contract itself." *Triangle Underwriters, Inc. v. Honeywell, Inc.;* 604 F.2d at 747. Since Counts 3 and 4 refer to alleged misrepresentations and concealments made after the parties had entered into a contractual relationship, I find these allegations do not state separate tort claims for the purposes of applying the six year statute of limitations. Accordingly, for statute of limitations purposes, counts 3 and 4 of the complaint are governed by N.J.S.A. 12–2–725 ... (four year statute).

In the present case, there was no fraudulent inducement alleged which led to Deutz and Crow's entering into their requirements contract with Cement Plant. Deutz & Crow alleged fraud long after the parties entered into this contractual agreement. Therefore, these allegations do not state separate tort claims for the purposes of applying the six-year Statute of Limitations. Thus, the four year statute applies. SDCL 57A–2–725.

Affirmed.

MILLER, C.J., WUEST, J., and MORGAN, Retired Justice, concur.

SABERS, J., concurring specially.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not having been a member of the court at the time this case was considered, did not participate.

SABERS, Justice (specially concurring).

I concur because the breaches of the contracts all occurred in 1978 and Deutz & Crow was painfully aware of them. In fact, its vice president made demands in 1978 against Cement Plant based on said breaches and threatened Cement Plant with "extensive and costly litigation in the Federal Court sitting in Minnesota" if its demands were not met. Despite this, Deutz & Crow claims it didn't know the breaches were actionable and argues that Cement Plant fraudulently deceived it by covering up all the details. Even if that were the case, it is not the test. Deutz & Crow does not have a distinct cause of action for fraud, deceit, or intentional interference with contracts since fraud, if any, was ancillary to the breach of contract cause of action. Clearly, Deutz & Crow should have brought its lawsuit within four years of the breaches of contract and damages which occurred in 1978. SDCL 57A–2–725.